EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VÍC-
TOR ERAUSQUÍN MARTÍNEZ y LUIS A. URBIA PÉREZ, acu-
sados y apelantes.

*Número:* CR-67-50    *Resuelto:* 6 de mayo de 1968

*Enrique Miranda Merced* y *E. Armstrong de Watlington,* abogados de los apelantes; *J. F. Rodríguez Rivera, Procurador General Interino,* e *Ida Cardona Hernández, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Los apelantes Víctor Erausquín Martínez y Luis A. Urbia Pérez y otra persona llamada José Heriberto Vázquez Sánchez fueron acusados conjuntamente de una infracción al Art. 29 de la Ley de Drogas y Narcóticos consistente en que en concierto y de común acuerdo tenían en su posesión y dominio la droga narcótica conocida como heroína.

El acusado Vázquez Sánchez se declaró culpable y en fecha posterior los apelantes fueron juzgados ante jurado y declarados culpables. Presentaron una moción de nuevo juicio que fue declarada sin lugar.

La prueba de cargo, creída tanto por el jurado como por el juez demostró que la policía había recibido querellas en el sentido de que en el sector conocido como "La Perla",

habían casas desocupadas que servían de guarida a personas adictas a drogas que las utilizaban para ir a inyectarse. En enero 15 de 1966, como a las cuatro de la tarde los policías Jorge Muñiz, José Ayala y Soto Calderón, hacían un recorrido por ese sector. Notaron que en una casa deshabitada habían tres personas. Entraron y una de esas personas, el acusado Erausquín dejó caer al piso una cartera negra. El otro acusado Urbia tenía en la mano uno de esos sobrecitos conocidos como *deck*. El policía Muñiz recogió la cartera, la abrió y encontró en su interior siete *decks* de heroína. Procedieron a arrestar a dichas personas.

La prueba de cargo describe la casa donde estaban los acusados, como una casa deshabitada donde no vive nadie. Era de un solo salón, no habían muebles. No tenía ventanas ni puertas aunque sí tenía el hueco de una ventana y el de una puerta; o sea el marco donde van la ventana y la puerta.

La evidencia ocupada se entregó al químico de la policía la misma tarde y luego de analizada todos los *decks* dieron positivo de heroína.

La prueba de defensa se limitó a tratar de establecer que la casa donde fueron sorprendidos los acusados era la residencia de uno de ellos, de Erausquín; que dicha casa estaba amueblada y tenía ventana y puerta.

La prueba de refutación de cargo demostró que con posterioridad a la ocurrencia de los hechos, la casa fue alterada y se le puso puerta y dos ventanas.

Se señala en este recurso que el tribunal sentenciador incidió (1) al no ordenar la supresión de la evidencia ocupada porque la misma era el producto de un registro ilegal y al instruir al Jurado sobre las circunstancias en que deberían considerar o abstenerse de considerar dicha evidencia; (2) las excesivas intervenciones del magistrado privaron a los apelantes de un juicio justo e imparcial; (3) al invadir el terreno reservado al jurado, comunicándole a éste conclu-

4

siones de hecho y, (4) al presionar al jurado para que llegase a un veredicto.

El primer error no fue cometido. Una vez oída la prueba de ambas partes sobre la descripción de la casa donde fueron sorprendidos los acusados, y oída además la prueba de cargo sobre las circunstancias en que se ocupó la evidencia, ya que sobre este particular la defensa no presentó prueba, el juez admitió dicha evidencia. A los fines de si debían considerar o no la evidencia ocupada el juez permitió en sus instrucciones que el jurado dirimiera el conflicto en la prueba. Evidentemente el jurado, al declarar culpables a los acusados, no dio crédito a la prueba de defensa y consideró la evidencia ocupada.

■ La garantía constitucional contra allanamientos y registros ilegales no cubre el registro de estructuras abandonadas, ni la incautación de evidencia que es abandonada o arrojada por una persona. *Pueblo* v. *Saura Gómez*, 90 D.P.R. 801 (1964); *Pueblo* v. *González Charón*, 83 D.P.R. 450 (1961); *Pueblo* v. *Del Valle*, 83 D.P.R. 457 (1961).

■ Por otro lado, en vista de que el agente que declaró en el juicio vio a uno de los acusados que tenía un sobrecito de los conocidos como *deck* en la mano, el arresto efectuado fue legal de acuerdo con las disposiciones de la Regla 11 de Procedimiento Criminal.

■ La excesiva intervención del juez en el interrogatorio de los testigos apuntados en el segundo señalamiento de error, no justifica en este caso la revocación de las sentencias apeladas.

El juez hizo preguntas tanto al agente Muñiz como a los testigos de defensa que iban encaminadas a determinar si la casa donde se encontraban los acusados era en verdad una casa abandonada, deshabitada, sin puertas ni ventanas o si por el contrario era la residencia de uno de los acusados y tenía muebles, puertas y ventanas. Su intervención en los

interrogatorios en este aspecto se justifica si se considera que correspondía al juez apreciar la prueba para poder resolver el planteamiento sobre la legalidad del arresto de los acusados y la ocupación de la evidencia ya que los agentes no estaban provistos de una orden de arresto o una de allanamiento. La intervención del juez a lo largo del proceso no nos da la impresión de que lesionara los derechos de los acusados a un juicio justo e imparcial.

■ En el tercer señalamiento de error se quejan los apelantes de que el juez invadió el terreno reservado al jurado porque al finalizar sus instrucciones les dijo que tuvieran cuidado al bregar con la evidencia objetiva "ya que se ha establecido que sí es heroína y por lo tanto al bregar tengan cuidado no se impregnen las manos de la misma porque podría tener efectos nocivos en ustedes, . . . ."

Aunque no sancionamos tal instrucción, dadas las circunstancias que concurren en este caso, no creemos que por ese motivo deban revocarse las sentencias apeladas.

La prueba incontrovertida de cargo demostró que los sobrecitos ocupados a los acusados contenían heroína. El abogado Sr. Tejada al repreguntar al agente Muñiz hacía referencia a esa evidencia como heroína. La observación atacada la hizo el juez cuando ya había dado todos sus instrucciones. No creemos que la misma perjudicara los derechos sustanciales de los apelantes.

■ Por último, tampoco creemos que el veredicto rendido fuera el resultado de coacción o intimidación por parte del juez.

El jurado fue traído a Sala en más de una ocasión para investigar la posibilidad de que pudieran rendir un veredicto. En una de esas ocasiones el jurado informó que estaban 8 a 4 sin decir si era para condenar o absolver. En reiteradas ocasiones el juez le pidió que hicieran un esfuerzo para llegar a un veredicto pero siempre les aclaró que dicho veredicto debía ser el resultado de una ponderación serena de la prueba

presentada y admitida y que el factor tiempo que tomaran para decidir no debía influir en sus ánimos.

No concurren en este caso circunstancias que revelen que el veredicto rendido fue el resultado de la coacción o intimidación del juez. Véase *Pueblo* v. *Rivera*, 77 D.P.R. 664 (1954).

*Por las razones expuestas se confirmarán las sentencias apeladas.*