CATALÁN GONZÁLEZ Y CO., INC., demandante y apelada, *v.* JUSTINO GARCÍA MARTÍNEZ Y OTROS, demandados y apelantes.

*Número:* O-75-48      *Resuelto:* 11 de noviembre de 1975

*José B. Díaz Asencio* y *Felipe Cirino Colón,* abogados de los apelantes; *Eduardo E. Ortiz,* abogado de la apelada.

PER CURIAM: Se trata en este caso de la invasión ilegal por parte de los demandados de un predio de terreno perteneciente a la demandante apelada. La vista del caso en sus méritos se celebró en 9 de enero de 1973.

El predio de terreno objeto de este litigio es el remanente de una finca con cabida de once cuerdas radicada en el Barrio Cañaboncito de Caguas. Esta finca fue adquirida por la parte demandante, Catalán González & Compañía, Inc., según lo evidencia la Escritura de Compraventa Núm. 75 del 28 de julio de 1956 otorgada ante el Notario Benjamín Rodríguez Ramón.

La antes mencionada finca fue objeto de tres expropiaciones forzosas entre los años 1956 a 1971, a saber: (a) en el año 1962 se expropiaron 4.2342 cuerdas para el Departamento de Obras Públicas; (b) en el año 1964 se expropiaron 894.06 metros cuadrados para la Autoridad de Acueductos y

Alcantarillados; y (c) en el año 1971 se expropiaron 2.6208 cuerdas para el Departamento de Obras Públicas.

La cabida actual de dicha finca es de 3.73 cuerdas dividida en las siguientes dos parcelas. La parcela "A" comprende 2.96 cuerdas y la parcela "B" 0.77 cuerdas.

La mencionada propiedad ha garantizado en el pasado obligaciones de la demandante y sirve en la actualidad de garantía de su crédito mercantil mediante gravámenes hipotecarios.

Como resultado de conversaciones con el Gobierno Municipal de Caguas la demandante ha permitido temporeramente a dicho Gobierno Municipal utilizar gratuitamente una parte de la parcela "A" con fines de recreo público. En 27 de mayo de 1970 la demandante autorizó por escrito al Secretario de Obras Públicas a entrar, mediante sus empleados y máquinas, a las parcelas "A" y "B", con motivo de obras de canalización de la quebrada Los Muertos.

Para noviembre de 1972 las personas naturales demandadas invadieron y ocuparon sin derecho ni autorización alguna los terrenos de la parcela "A" y comenzaron a erigir en ellas varias edificaciones de distinta naturaleza con el propósito de vivirlas. Previa la prestación de una fianza por $15,000 la demandante obtuvo en 6 de diciembre de 1972 una orden de entredicho provisional contra los demandados. Por estipulación de las partes se extendió dicha orden hasta la celebración del caso en sus méritos.

Visto el mismo, el tribunal dictó orden de *injunction* permanente ordenando a los demandados que se abstuviesen, bajo apercibimiento de desacato, de penetrar en y ocupar dicha parcela propiedad de la demandante, de edificar allí y de en forma alguna interferir con la posesión libre y pacífica de dicho inmueble por sus dueños.

En apelación los demandados plantean ante nos tres cuestiones. (1) Que se privó a los demandados Ana Sosa Flores y Bernardo Ayala del debido proceso de ley al dictarse senten-

cia en su contra porque el tribunal carecía de jurisdicción sobre ellos. (2) Que erró el tribunal de instancia al dictar sentencia a favor de la demandante en ausencia de evidencia sobre la posesión material del inmueble por la demandante dentro del año precedente a la presentación de la demanda. (3) Que se privó a los demandados de su derecho al disfrute de su propiedad, a la protección contra ataques a su vida privada y a la protección de sus casas y efectos contra allanamientos irrazonables.

Dichos planteamientos son frívolos, pues las partes estipularon que se dictara sentencia a favor de la demandante, que la sentencia cubriese a todos los demandados que habían invadido el terreno en cuestión, con la condición de que una vez dictada la sentencia, el caso se remitiese a las agencias correspondientes del Gobierno para que éstas tomasen las medidas pertinentes. Así lo aceptaron las partes y también el tribunal.

La condición antes aludida se refiere al contenido de la Ley Núm. 1 del 19 de junio de 1971, mediante la cual se enmendó el Art. 635 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2836. A tenor con dicha ley, cuando se trate del desahucio de personas que estén ocupando ilegalmente terrenos ajenos, el término para el lanzamiento será de 40 días y en aquellos casos en que el tribunal determine que las condiciones del demandado lo ameriten, notificará con copia de la sentencia, luego de que ésta sea firme, al Director Ejecutivo de la Corporación de Renovación Urbana y Vivienda o al Director de la Administración de Programas Sociales, según proceda. El mencionado término de 40 días empezará a contarse a partir de la fecha de dicha notificación. La ley dispone que dichas agencias, una vez notificadas, "tomarán las medidas que estimen pertinentes."

Para abundar, precisamos lo siguiente. Por la parte demandante declararon Fernando Moreno Salas y Juan A. Cintrón. Moreno Salas declaró que trabaja con la demandante y

que es Tesorero de dicha firma. Se le preguntó si sabía si aquella poseía algún inmueble en Caguas, a lo cual contestó que sí y produjo una Certificación expedida el 30 de noviembre de 1972 por el Registrador de la Propiedad en ese sentido. A esto, el abogado de los demandados expresamente manifestó "No hay objeción." Declaró el testigo que la demandante adquirió esa propiedad en el año 1956, que la misma se utiliza como garantía en las operaciones mercantiles de la demandante y entró en otros detalles que no es menester relacionar.

El testigo Juan A. Cintrón declaró que es Agrimensor, que conoce la propiedad de la demandante, que en el año 1968 hizo la mensura de dicha propiedad, que en el mismo día en que declaraba había pasado por la misma y que había visto las construcciones de madera que allí habían levantado y presentó un plano. Al concluir su declaración el abogado de los demandados expresó que no tenía objeción a la presentación del plano y que no haría preguntas.

Luego hubo un diálogo entre el Juez y el abogado sobre el papel que le correspondía hacer a la Corporación de Renovación Urbana y Vivienda en el caso.

El tribunal expresó que no cuestionaba nada de lo que correspondiese hacer a las agencias del Gobierno bajo la ley, que la ley autoriza la intervención de la Corporación de Renovación Urbana y Vivienda después de sentencia, que la función de dicha agencia es la de investigar para determinar la condición económica de las personas demandadas y para hacer el realojo que correspondiese. Al expresar el Magistrado, "Vamos a oír a la parte demandada.", el abogado defensor expresó su deseo de un receso para tratar en cámara ciertos aspectos del caso o que se estipulase en corte abierta sobre el mismo.

Continuó el diálogo y finalmente el juez expresó "El Tribunal invita a las partes al diálogo. Si son todos, todos. [Los demandados.] Si hay que sacar alguno; o si las partes

quieren los mando a todos para el 'field,' para la Corporación de Renovación Urbana y Vivienda, para que haga el 'scanning' y determine cuáles casos son meritorios, pero que sea vinal [*sic*] [obviamente quiere decir final] para las partes."

A dichas expresiones del juez el abogado de los demandados contestó:

"A esos efectos es que va la estipulación, a los efectos que no vayamos a pasar caso por caso y estemos todo el día: ¿dónde vive su familia? Que entonces hagamos la estipulación, que Su señoría refiera los casos a la CRUV. Desde ahora, que sea la CRUV quien haga el proceso."

Continuó el diálogo entre los abogados y el juez y se decretó un receso. Al ordenar el juez la continuación de los procedimientos tuvo lugar el siguiente diálogo:

"LCDO. ORTIZ [Abogado de la demandante]: Vuestro Honor, las partes hemos conversado sobre el caso y estamos dispuestos a someter el caso por la prueba que se ha presentado, en la estipulación, y que si Vuestro Honor luego de examinar la prueba dictaminara que se procede a dictar Sentencia a favor de la parte demandante, que en ese caso envíe a la CRUV Resolución sobre los procedimientos.

HON. JUEZ: La otra parte. . . .

LCDO. CIRINO [Abogado de los demandados]: Nosotros habíamos considerado la presentación de prueba a ciertos fines específicos, pero en vista de la situación entendemos que no es necesario y queremos hacer la proposición al Tribunal que remita el caso una vez dictada la Sentencia a la Agencia correspondiente; y que el Tribunal, al hacer la determinación de hechos, tome en consideración todos y cada una de la prueba desfilada [*sic*] en el caso y todos y cada uno de los planteamientos que se han hecho."

Luego de este intercambio, el Juez declaró con lugar la demanda y suspendió todo lanzamiento mientras se hacía la investigación por el Departamento de la Vivienda para que se procediese al realojo de aquellos demandados meritorios. Luego de esta expresión del juez, lo único que levantó el abogado de los demandados fue que se oponía a la presenta-

ción en evidencia de unas fotografías y el tribunal determinó que se admitían. Se dio por terminada la vista del caso.

■■■ Conviene además aclarar que en casos como el presente, de invasiones ilegales, a sabiendas, de inmuebles ajenos, dicha invasión no crea derecho de privacidad alguna a favor de los invasores ni protege su posesión ilegal. Resulta ridículo que personas que invaden ilegalmente y sin derecho alguno inmuebles ajenos planteen como error, como se ha hecho en este caso, que se les privó del disfrute "de su propiedad" y de la "protección de sus casas y efectos contra allanamientos irrazonables." Un caso que establece normas vigorosas y claras sobre el particular es el de *Amézquita* v. *Rafael Hernández Colón y otros*, resuelto por el Tribunal de Apelaciones de los Estados Unidos, Primer Circuito, en 20 de junio de 1975, 518 F.2d 8.

■■ Allí se trataba de lo siguiente. Unos invasores ocuparon terrenos de la Autoridad de Tierras de Puerto Rico. Se les solicitó que desalojasen la propiedad y al negarse a ello la policía y la Autoridad de Tierras limpiaron el lugar con la ayuda de dos palas mecánicas, destruyendo en el proceso algunas estructuras que se habían levantado allí ilegalmente. En aquel caso también se planteó que se habían invadido los hogares de los invasores sin orden judicial y que habían sido objeto de allanamientos ilegales. Una Corte de Distrito federal les falló a favor, 378 F.Supp. 737 (1974), pero la Corte del Primer Circuito revocó dicha decisión y declaró que los invasores no tenían ninguna clase de derecho (*no colorable claim to occupy the land*). También declaró que su alegación sobre invasión de privacidad era ridícula. Declaró el tribunal que se trataba de un pleito de clases; que se había nombrado a dos de los demandados y que los abogados habían asumido la representación de todos los afectados. Declaró el tribunal que para determinar lo que era el hogar o casa de una persona, a estos efectos, no podía hacerse haciendo caso omiso

de la manera en que fue adquirida. Añadió que mediante un *fait accompli* de esa naturaleza no se establecía ningún derecho de privacidad del hogar. (¹)

*No habiéndose cometido los errores señalados, se confirmará la sentencia recurrida.*

---

(¹) El Código Penal de 1974 castiga con pena de reclusión por un término máximo de 6 meses, o multa máxima de $500 o ambas penas, a discreción del Tribunal, a toda persona que invadiere ilegalmente terrenos o propiedades ajenas. Art. 177 del Código Penal, 33 L.P.R.A. sec. 4283.