EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* RAMÓN ROSA RAMÍREZ, demandado y acusado.

*Número:* CE-91-733          Resuelto: 6 de junio de 1994

---

*Cándida Valdespino Zapata, División de Apelaciones de la Sociedad para Asistencia Legal*, abogada del peticionario; *Reina Colón de Rodríguez, Subprocuradora General*, y *Blanca A. Díaz Segarra, Procuradora General Auxiliar*, abogadas de El Pueblo.

## SENTENCIA

El peticionario, Ramón Rosa Ramírez, recurre ante nos debido a la resolución emitida por el Tribunal Superior, Sala de Aguadilla (Hon. Francisco Gandarilla Guerra, Juez), que declaró sin lugar la moción de supresión de evidencia presentada por él. Examinada cuidadosamente la Exposición Narrativa de la Prueba presentada durante la vista para la consideración de la referida moción, así como el derecho aplicable, revocamos la resolución recurrida.

### I

El Pueblo de Puerto Rico presentó el 9 de enero de 1991 dos (2) denuncias contra Ramón Rosa Ramírez y Marta Camacho Díaz, respectivamente, por una infracción al Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401. En las denuncias se les imputó el delito de posesión con intención de distribuir cocaína y heroína.

Conforme al testimonio del Agente José R. Rosa Otero, el 8 de enero de 1991, es decir, el día anterior a los hechos, se recibió una confidencia sobre una casa abandonada en el Sector Campo Alegre de Aguadilla donde, alegadamente, se estaba almacenando propiedad producto de escalamientos y del intercambio por drogas. La casa era propiedad del Sr. Saturnino Cortés, quien a la fecha de los hechos había fallecido. Luego de coordinar con los agentes de la División de Drogas, varios agentes se trasladaron al referido sector y entraron a varias casas sin verjas ni puertas. Alegadamente se encontraron en esas casas agujas hipodérmicas y bolsas.

Según declaró el agente Rosa Otero, al llegar a la casa del fenecido Sr. Saturnino Cortés, la puerta estaba entreabierta. Los agentes alegadamente entraron y observaron una bolsa plástica transparente, que por su experiencia parecía cocaína. El peticionario se encontraba acostado en un catre, acompañado de Marta Camacho Díaz. La evidencia fue ocupada, le fueron leídas a Ramón y a Marta las advertencias de rigor y fueron arrestados.

El 26 de febrero de 1991 se celebró la vista preliminar y el tribunal determinó que *no* existía causa probable. A solicitud del Ministerio Público, se celebró una vista preliminar en alzada y el 19 de abril de 1991 el tribunal determinó que existía causa probable para los delitos imputados. Debido a éstos, fue presentada la acusación contra el peticionario.

El peticionario presentó una Moción de Supresión de Evidencia para alegar que el allanamiento de la residencia donde éste se encontraba fue irrazonable y llevado a cabo sin una orden judicial.

Celebrada la vista para la consideración de la moción de supresión, el 16 de octubre de 1991 el Tribunal Superior emitió una resolución que la declaró sin lugar. Concluyó el tribunal de instancia que Ramón Rosa Ramírez era un invasor en la propiedad —donde ocurrieron los hechos— y que dicha propiedad era una casa abandonada. Por ello interpretó el tribunal que el acusado no tenía una expectativa razonable de intimidad.

Inconforme, Ramón Rosa Ramírez recurrió ante este Tribunal, señalando en su "Petición de *certiorari*", pág. 8, que:

> Erró el Tribunal de Instancia al no suprimir la evidencia ocupada por haberse efectuado un registro y allanamiento irrazonable sin orden en la casa donde pernoctaba ... con permiso del dueño de la propiedad.

Examinada detenidamente la Exposición Narrativa de la Prueba, el 26 de junio de 1992 emitimos una orden al

Estado para que mostrara causa por la cual no debíamos revocar la resolución recurrida. Evaluada la comparecencia de la Procuradora General, ésta no nos persuade. Ante ello, resolvemos según lo intimado.

## II

Recientemente, en *Pueblo v. Ramos Santos*, 132 D.P.R. 363, 370 (1992), resumimos la doctrina vigente en nuestra jurisdicción sobre el registro y allanamiento sin orden. Allí explicamos que éste "se presume irrazonable, por lo que compete al Ministerio Público rebatir la presunción de invalidez mediante la presentación de prueba sobre las circunstancias especiales que permiten actuar sin orden". Véanse: *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988); *Pueblo v. Falú Martínez*, 116 D.P.R. 828 (1986); *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979).

Entre las excepciones al registro o allanamiento sin orden, en nuestra jurisdicción hemos reconocido cuando se lleva a cabo en una estructura abandonada. Véase *Pueblo v. Erausquín Martínez*, 96 D.P.R. 1 (1968).

La garantía constitucional contra registros o incautaciones irrazonables persigue los tres (3) objetivos siguientes: "proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión ...." *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984). Véanse: *Pueblo v. Muñoz, Colón y Ocasio*, 131 D.P.R. 965 (1992), opinión disidente del Juez Asociado Señor Hernández Denton; *Pueblo v. Ramos Santos*, supra.

En el caso *Pueblo v. Ramos Santos*, supra, citando a *Pueblo v. Lebrón*, supra, explicamos que al analizar la solicitud de supresión de evidencia es necesario determinar lo siguiente:

(1) si el acusado que la solicita tiene capacidad para invocar

el privilegio; (2) en ausencia de orden, si le era posible al Estado obtenerla sin comprometer la eficacia del registro o la seguridad de sus agentes, y (3) la razonabilidad del registro. *Pueblo v. Ramos Santos*, supra, pág. 371.

Relacionado con el elemento de la capacidad para solicitar la supresión, en *Catalán González y Co. v. García*, 104 D.P.R. 380, 386 (1975), resolvimos que la invasión ilegal de un inmueble ajeno "no crea derecho de privacidad alguna a favor [del] invas[or] ni protege su posesión ilegal". Véase, además, *Amezquita v. Hernández-Colón*, 518 F.2d 8 (1er Cir. 1975), *cert.* denegado, 424 U.S. 916 (1976). Por ello, en *Pueblo v. Ramos Santos*, supra, págs. 371–372, explicamos que "[u]na persona que se encuentra ilegalmente en un sitio no tiene legitimación activa para reclamar el derecho contra un registro irrazonable garantizado constitucionalmente, *pues no tiene expectativa de intimidad alguna. El peso de probar que estaba legalmente en dicho sitio le corresponde al acusado*". (Énfasis suplido.) Véase W.R. La-Fave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 4, Sec. 11.3(b).

Para la evaluación de la solicitud de supresión de evidencia, desde *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986), hemos establecido unas guías para considerar el efecto de las presunciones y sobre la presentación y peso de la prueba para sostener las alegaciones. Véanse, entre otros: *Pueblo v. Saliva Valentín*, 130 D.P.R. 767 (1992); *Sucn. Del Coro Lugo v. Srio. de Hacienda*, 130 D.P.R. 1 (1992); *Pueblo v. Rivera Colón*, 128 D.P.R. 672 (1991); *Pueblo v. Narváez Cruz*, 121 D.P.R. 429, 436 (1988).

En lo pertinente, conforme al resumen que nos presenta la profesora Resumil de San Filippo, estas reglas señalan lo siguiente:

1. Cuando la alegación se sostenga bajo el fundamento de que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro, se presume irrazonable la intervención.
2. Tratándose de una presunción que favorece al Peticiona-

rio compete al Ministerio Público probar mediante preponderancia de evidencia la razonabilidad a base de las excepciones doctrinales.

3. De no cumplirse con este requisito, el juzgador vendrá obligado a declarar la irrazonabilidad de la incautación. *Práctica Jurídica de Puerto Rico* en: O.E. Resumil de San Filippo, *Derecho Procesal Penal*, New Hampshire, Ed. Equity Pub. Co., 1990, T. 1, Cap. 12, Sec. 12.13, pág. 321.

## III

En el caso de autos, el peticionario señala que estaba en posesión de la casa —con el permiso de los dueños— para pernoctar allí con Marta Camacho Díaz. Por ello alega que tenía una expectativa razonable de intimidad.

El Estado, por su parte, alegó que el peticionario era un ocupante ilegal o invasor en la casa, por lo que era irrelevante si la propiedad estaba o no abandonada.

## IV

De la Exposición Narrativa de la Prueba surge que el peticionario logró demostrar, mediante prueba que *no* fue rebatida por el Estado, que éste estaba autorizado por los propietarios del inmueble a pernoctar allí a la fecha de los hechos.

Como testigo de El Pueblo declaró la Sra. Olga Nieves Cortés, viuda del Sr. Saturnino Cortés y copropietaria de la casa. De su declaración surge, en lo pertinente, que ésta inicialmente negó que hubiera autorizado al peticionario a pernoctar en su casa de Campo Alegre por temor a que se la confiscaran. Surge también de la declaración de esta testigo que en reiteradas ocasiones reafirmó haber autorizado al peticionario, a través de su hijo Alvin Cortés, a utilizar la casa. Al ser confrontada la señora Nieves con su declaración anterior, y nuevamente ser advertida sobre el delito de perjurio, ésta reafirmó que en realidad quien autorizó al

peticionario fue su hijo, copropietario de la casa, y que ella, al ser informada por su hijo, consintió. Su consentimiento equivale a que ella autorizó también al peticionario a ocupar la casa.

A pesar de que el cambio en la declaración de la señora Nieves podría arrojar dudas sobre su credibilidad, interpretamos que los motivos que tuvo para ello constituyen una explicación razonable, que requería evaluarse a la luz de la totalidad de su declaración y de las demás circunstancias del caso. Erró el tribunal al no ponderar este aspecto.

Con la declaración del Sr. Alvin Cortés se corrobora lo declarado por la señora Nieves, a los efectos de que éste fue quien autorizó al peticionario a utilizar la casa de Campo Alegre. Surge también de su declaración que, aunque no le entregó una llave, le explicó al peticionario el modo de abrir la cerradura con un clavo.

El Estado intentó atacar la credibilidad de este testigo por su vacilación en cuanto a precisar si se encontró con el peticionario el 8 o el 9 de enero de 1991. Entendemos que ello no es suficiente para derrotar la credibilidad de este testigo ni la totalidad de su testimonio. Surge de la Exposición Narrativa de la Prueba que este testigo admitió estar en duda con respecto a las dos (2) fechas. No hubo prueba por parte del Estado que ubicara al Sr. Alvin Cortés en otro sitio durante el 8 y el 9 de enero de 1991. Tampoco creemos que sea totalmente inverosímil la versión sobre la autorización al peticionario para que éste pernoctara en la casa junto a Marta Camacho Díaz.

Se desprende de la Exposición Narrativa de la Prueba que el peticionario era conocido de la familia Cortés-Nieves desde pequeño. Hacía alrededor de dos (2) años que había donado sangre para la hija de la señora Nieves. No estamos ante una situación de una persona extraña a los propietarios de la casa en cuestión, por lo que resulta creíble que, conociendo el hecho de que la casa estaba desocupada,

éste le solicitara al Sr. Alvin Cortés permiso para estar en la casa a solas junto a su acompañante.

Al no ser rebatido por el Estado que el peticionario estaba autorizado por los propietarios a pernoctar en la casa referida, tenemos que concluir que éste tenía una expectativa de privacidad y podía cuestionar la razonabilidad del registro o allanamiento.

De la Exposición Narrativa de la Prueba resulta que el Estado no pudo probar a través de sus testigos que el peticionario era un invasor ni que la casa estaba abandonada, o que tuviera aspecto o apariencia de estar abandonada. De la totalidad de la prueba que tuvo ante sí el tribunal de instancia, quedó demostrado que en este caso no existe ninguna de las excepciones que, en nuestro ordenamiento, permiten el registro o allanamiento sin orden. Al parecer, durante la vista el Estado intentó, mas no logró, demostrar que la casa estaba abandonada. En su escrito ante nos solamente se alega que el peticionario era un invasor y la excepción de casa abandonada se trata como irrelevante.

En resumen, el peticionario demostró que se encontraba legalmente en la casa referida y que tenía una expectativa de privacidad. El Estado no rebatió esta prueba y tampoco logró probar la razonabilidad del registro o allanamiento. El tribunal erró al no conceder la supresión solicitada.

Como regla general, este Tribunal no interviene con la aquilatación de la prueba que haga el tribunal de instancia; sin embargo, "[u]na apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal". *Vda. de Morales v. De Jesús Toro*, 107 D.P.R. 826, 829 (1978). Véase *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 D.P.R. 702 (1990).

Por los fundamentos anteriormente expuestos, *se revoca la resolución recurrida, se declara con lugar la moción de supresión de evidencia presentada por el peticionario y se devuelve el caso al tribunal de instancia para la continua-*

*ción de los procedimientos en conformidad con lo aquí expuesto.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López concurrió sin opinión escrita. El Juez Asociado Señor Negrón García disintió con opinión escrita. El Juez Asociado Señor Fuster Berlingeri no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

I

Este caso pertenece al mundo real que lamentablemente estamos acostumbrados a leer en la prensa diaria, producto de la subcultura prevaleciente en el país y relacionada con el triste, pero lucrativo, tráfico ilegal de sustancias controladas (drogas).

Distinto al criterio mayoritario, estamos ante un registro y allanamiento sin orden judicial pero *válido* por haberse efectuado en una estructura deshabitada por más de seis (6) años y usada por terceros como almacén de mercancía hurtada y hospitalillo del negocio de droga.

Como resultado del registro se ocuparon: ciento setenta y cuatro (174) envolturas de aluminio en forma de pastel que contenían en su interior un polvo marrón (*brown*) de heroína; tres (3) bolsas plásticas transparentes, pequeñas y autosellables que contenían en su interior un polvo amarilloso, pastón de cocaína; una (1) bolsa plástica transparente autosellable que contenía en su interior semillas de supuesta marihuana; una (1) estufa; un (1) aire acondicio-

nado; dos (2) bicicletas; un (1) televisor; un (1) video cassete, y otras propiedades.

Para fines adjudicativos, el peticionario "Rosa Ramírez acepta que esa evidencia ... le pertenecía o estaba bajo su inmediato control; entre ella, cocaína, heroína y 122.4 gramos de semilla de marihuana". Resolución de 16 de octubre de 1991, pág. 1. Al tribunal de instancia (Hon. Francisco Gandarilla Guerra, Juez) no le mereció crédito la tesis del acusado Ramón Rosa Ramírez de que estaba en posesión inmediata con permiso de sus dueños y, por ende, tenía una expectativa razonable de privacidad.

## II

En Puerto Rico prevalece el enfoque analítico de *Katz v. United States*, 389 U.S. 347 (1967), a los efectos de que la garantía constitucional contra los registros y allanamientos irrazonables *protege fundamentalmente personas, no lugares específicos.* Lo crucial es determinar si la persona tiene derecho razonable a abrigar, donde sea y en las circunstancias del caso, la expectativa de que su intimidad sea respetada. *Pueblo v. Rivera Colón*, 128 D.P.R. 672 (1991); *Pueblo v. Bogard*, 100 D.P.R. 565 (1972).

En este aspecto hemos resuelto reiteradamente que esta garantía constitucional no se extiende a estructuras abandonadas, pues es un derecho personal del poseedor u ocupante *legal* de la propiedad registrada —*Pueblo v. Erausquín Martínez*, 96 D.P.R. 1 (1968); *Pueblo v. Arroyo Ramírez*, 96 D.P.R. 576 (1968)— y no cobija al invasor. *Catalán González y Co. v. García*, 104 D.P.R. 380, 386 (1975).

## III

En el caso de autos, contrario a como ha concluido la mayoría en su Sentencia, pág. 6, el Ministerio Fiscal rebatió satisfactoriamente la prueba de que alegadamente me-

dió permiso. Para dilucidar la cuestión, el reputado foro de instancia escuchó, entre otros, a tres (3) testigos, a saber, un (1) agente y dos (2) copropietarios de la casa objeto del registro. La controversia giró en torno a su credibilidad. Obviamente, el tribunal aquilató esos testimonios. No surge que su estimación fuera hija de la irreflexión o del capricho; por el contrario, parece ser producto de un serio y ponderado discernimiento judicial. Veamos.

El agente José R. Rosa Otero atestó sobre la confidencia que motivó, junto a otros agentes de la División de Drogas, a personarse al lugar. El tribunal enfatizó que, según ese testigo, se trata de una casa deshabitada o abandonada hace seis (6) años y ubicada en un sector *donde hay varias otras casas contiguas también abandonadas.* Ésta servía de almacén de propiedad hurtada y en ella se realizaban negocios ilícitos y consumo de drogas. La edificación estaba sumamente deteriorada, le faltaban varias ventanas y la puerta principal estaba entreabierta. Carecía de los servicios de agua y luz.

Al entrar, el agente Rosa Otero vio una bolsa plástica transparente sobre una mesa, que por su experiencia contenía cocaína. Cerca, acostados en un catre, estaban el peticionario Rosa Ramírez y una dama.

La tesis de permiso presentada por la defensa, a través de los testigos Olga Nieves y Alvin Cortés, no mereció ningún crédito. El tribunal expuso:

> La Sra. Olga Nieves, testigo del pueblo, prestó un testimonio hostil[,] *con evasi[vas] y negándose a contestar a preguntas del fiscal.*
>
> Confrontada con su declaración jurada prestada en Fiscalía, el día 15 de marzo de 1991, sobre si había dado permiso a Ramón Rosa (acusado) y a Marta Camacho para que vivieran en la casa intervenida, *contestó que nunca. ...*
>
> No obstante, durante la Vista de Supresión atestó lo contrario en *forma confusa,* que ella le había dado permiso y *luego que había sido su hijo Alvin.* Dicho testimonio fue igualmente *confuso y vacilante* en cuanto al tiempo que dicha casa había estado desocupada. (Énfasis suplido.) Resolución, *supra,* pág. 3.

Y, en cuanto al testimonio del otro testigo Alvin Cortés, dicho foro expresó:

> Esa versión del encuentro entre el acusado y el testigo Alvin es *incompatible* con los *hechos* de este caso. Aquí la acusación sostiene que los hechos, o sea la intervención, ocurrieron el día 9 de enero de 1991, a las 11:00 a.m. En su consecuencia, entonces, *no pudo Alvin concederle permiso al acusado para quedarse en la casa,* cuando ya se había efectuado la intervención en horas de la mañana. (Énfasis suplido.) Resolución, *supra,* págs. 3–4.

Son evidentes las razones por las cuales el ilustrado tribunal de instancia no creyó la versión de que estos dos (2) testigos le dieron permiso al acusado Rosa Ramírez para pernoctar *esa noche* en la casa objeto del allanamiento. Jurídicamente hablando, esa apreciación significa que, independientemente de que la casa fuera o no una estructura abandonada, Rosa Ramírez era un intruso e invasor, puesto que la ocupaba ilegalmente; no puede ampararse bajo la sombrilla constitucional contra registros y allanamientos irrazonables, pues *no tenía ninguna expectativa de privacidad.*

## IV

No existe razón alguna que justifique intervenir con la apreciación que el tribunal hizo de la prueba. La sentencia revocatoria se aparta de la deferencia que debemos a los foros primarios, relativa a que están en mejor posición para aquilatar la prueba. *Pueblo v. Narváez Narváez,* 122 D.P.R. 80, 91 (1988); *Pueblo v. Rivero, Lugo y Almodóvar,* 121 D.P.R. 454, 471–474 (1988); *Pueblo v. Miranda Ortiz,* 117 D.P.R. 188 (1986); *Pueblo v. Pagán Díaz,* 111 D.P.R. 608, 621 (1981).

No hay el más mínimo asomo de pasión, prejuicio, parcialidad o error manifiesto. Simplemente estamos ante una

"intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia, [que significa] el caos y la destrucción del sistema judicial existente en nuestra jurisdicción". *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 648 (1986).