Colón Birriel, Juez Ponente
*785 TEXTO COMPLETO DE LA RESOLUCION
I
En el presente recurso el peticionario, José Rodríguez Carrasquillo ("Rodríguez"), nos solicita la revocación de una resolución que emitiera el Tribunal de Primera Instancia, Sala Superior de Caguas, el 7 de noviembre de 1996, mediante la cual declaró "No Ha Lugar" la "Moción de Supresión de Evidencia al Amparo de la Regla 234 de las de Procedimento Criminal" que ante dicho foro éste presentara a tenor con las disposiciones de la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. Ill R. 234. Denegamos.
n
Surge de los autos, que por hechos ocurrridos allá en o para el 24 de noviembre de 1995, a eso de las 2:20 de la tarde en la jurisdicción del Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Caguas, a Rodríguez se le formuló denuncia por infracción al Artículo 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. see. 2404.
Luego de los procedimientos preliminares se presentó contra Rodríguez el correspondiente pliego acusatorio ante la Sala Superior de dicho tribunal. Celebrado el acto de lectura de la acusación, oportunamente, Rodríguez presentó la moción de supresión de evidencia que ahora nos ocupa. Por su parte, el Ministerio Público compareció oponiéndose a dicha moción. La vista evidenciaría para discutir las referidas mociones, se celebró el 7 de noviembre de 1996. El tribunal, a base de la prueba que tuvo ante su consideración, declaró "No Ha Lugar" la moción de supresión de evidencia.
Para la correcta solución del recurso, evaluaremos tanto, la prueba presentada por el Ministerio Público en la vista evidenciarla a los fines de derrotar la alegada ilegalidad de la intervención de los agentes del orden público con Rodríguez, así como la moción de supresión presentada por esste último y la correspondiente oposición presentada por el Ministerio Público.
En la vista, declararon como testigos del Ministerio Público los agentes Jorge Candelaria (agente Candelaria) y Luis R. Algarín Algarín (agente Algarín), ambos adscritos a la División de Drogas de la policía de Caguas. Veamos, en lo pertinente, la prueba aportada por éstos.
Surge de la prueba y de los escritos presentados, que el 24 de noviembre de 1995 en horas de la tarde, el agente Candelaria hizo una llamada por el radio de su patrulla a sus compañeros, encontrándose entre éstos el agente Algarín, quien en ese momento se encontraba en la Avenida Shufford en el Municipio de Caguas esperando instrucciones para intervenir en un operativo policíaco en el Residencial Turabo Heights de dicho municipio. El agente Candelaria les informó que un vehículo Toyota Negro, modelo Tercel, Tablilla AV2-661, se acercaba al sitio donde ellos se encontraban. El vehículo era conducido por un individuo al que el agente Candelaria describió como blanco de pelo oscuro y vistiendo camiseta verde y a quien había visto haciendo una transacción de drogas en el Residencial Turabo Heights.
El agente Algarín logró ver el vehículo descrito por el agente Candelaria. Observó a través de los cristales del vehículo al individuo descrito por el agente Candelaria y le ordenó al conductor que se detuviera, quién así lo hizo. Se acercó al vehículo y pudo observar que el conductor y único ocupante tenía entre sus piernas, sobre el asiento, una bolsita de papel amarillo la cual estaba abierta y era idéntica a las que usualmente se utilizan para envolver la marihuana en el "punto" del residencial Turabo Heights. Procedió, entonces, a indicarle al conductor que se bajara del vehículo y ocupó la bolsita amarilla que había observado en el asiento, lo que parecía ser, según su experiencia, picadura de marihuana; lo puso bajo arresto, procediendo entonces a leerle las advertencias de ley. La persona arrestada resultó ser Rodríguez. Posteriormente, el agente Algarín llevó la evidencia ocupada y a Rodríguez a la División de Drogas de Caguas, donde el agente Roberto Santalla Aponte procedió a practicarle una prueba de campo a la evidencia, la que arrojó un resultado positivo de marihuana. Finalizada la vista evidenciaría el foro de instancia declaró "No Ha Lugar" la moción de supresión de evidencia presentada por Rodríguez.
Inconforme con esa determinación, Rodríguez recurrió ante este Tribunal imputándole al foro de instancia el *786 haber incurrido en error al declarar "No Ha Lugar" su solicitud de supresión de evidencia, por cuanto su arresto había sido ilegal.
ÍII
Rodríguez, en síntesis, alega ante nos que su arresto y registro fueron ilegales, por razón de no estar presentes las condiciones de ley que permiten y justifican los mismos. Se fundamenta en que el Ministerio Público no presentó prueba suficiente para derrotar la presunción de invalidez que acompaña a todo registro sin orden, presunción que está cobijada por la Sección 10 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. No le asiste la razón.
La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 10, en lo pertinente dispone lo siguiente:

"No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales." (Enfasis nuestro).
Se ha interpretado por nuestro Tribunal Supremo que la citada disposición constitucional tiene "como propósito proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias, e interponer la figura del juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión". E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197, 20-7 (1984); Pueblo v. Martínez Torres, 120 D.P.R. 496, 500 (1988); Pueblo v. Ramos Santos, 131 D.P.R. _ (1992), 92 J.T.S. 176; Pueblo v. Santiago Feliciano, 139 D.P.R. _ (1995), 95 J.T.S. 154. Es decir, dicha disposición constitucional constituye una protección contra invasiones a la santidad del hogar y a la vida íntima ("privacy"). Pueblo v. Vargas, 105 D.P.R. 335 (1976); Pueblo v. Cruz Torres, 137 D.P.R. _ (1994), 94 J.T.S. 122; Pueblo v. Santiago Feliciano, supra.
Para que sea válido un registro y allanamiento, éste tiene que ser: (a) legal y (b) razonable. Por otro lado, como norma general todos los registros y allanamientos que no sean hechos a virtud de una orden judicial se presumen irrazonables e inválidos, por lo que compete al Ministerio Público rebatir tal presunción de invalidez mediante la presentación de prueba sobre las circunstancias especiales que permiten actuar sin orden. Pueblo v. Lebrón, 108 D.P.R. 324 (1979); Pueblo v. Acevedo, 112 D.P.R. 770 (1982); Pueblo v. Falú Martínez, 116 D.P.R. 828 (1986); Pueblo v. Malavé González, 120 D.P.R. 470 (1988); Pueblo v. Narváez, 121 D.P.R. 429 (1988); Pueblo v. Rosa Ramírez, 137 D P.R. _ (1994), 94 J.T.S. 87, a la pág. 12029. Resumil de San Filipo, Práctica Jurídica de Puerto Rico, Derecho Procesal Penal, Equity Publishing Co., Tomo I, Cap. 12, sec. 12, 13, pág. 321.
Esta norma general, claro está, tiene sus excepciones. Es decir, se ha permitido un registro sin orden cuando: (1) ha mediado un consentimiento válido, Pueblo v. Acevedo Escobar, 112 D.P.R. 770 (1982); Pueblo v. Santiago Alicea, 140 D.P.R. _ (1995), 95 J.T.S. 45; (2) el registro es incidental y contemporáneo a un arresto válido, Pueblo v. Costoso Caballero, 100 D.P.R. 147 (1971); Pueblo v. Rosario Igartúa, 130 D.P.R. _ (1992), 92 J.T.S. 24; Pueblo v. Pacheco Báez, 131 D.P.R. _ (1992), 92 J.T.S. 69; (3) existen circunstancias extraordinarias y se quiere evitar que desaparezca la evidencia, Pueblo v. Nieves Vargas, 101 D.P.R. 263 (1973); (4) se incauta evidencia abandonada o arrojada por una persona; Pueblo v. Ortiz Martínez, 116 D.P.R. 139 (1935); Pueblo v. Ríos Colón, 129 D.P.R. _ (1991), 91 J.T.S. 66; Pueblo v. Ramos Santos, 133 D.P.R. _ (1992), 92 J.T.S. 176; Pueblo en interés de N.O.R., 138 _ D.P.R. _ (1994), 94 J.T.S. 118; (5) el registro se da en estructuras abandonadas; Pueblo v. Erausquín, 96 D.P.R. 1 (1968); Pueblo v. Ramos Santos, supra; (6) el registro se da en circunstancias en que el acto ilegal se realiza a plena vista, Pueblo v. Dolce, 105 D.P.R. 422 (1976); (7) el registro se lleva a cabo en sitios donde no quepa, dentro de las circunstancias del caso, una *787 expectativa razonable de intimidad, (doctrina de campo abierto), Pueblo v. Lebrón, supra; (8) el registro es de tipo inventario, Pueblo v. Rivera Rivera, 117 D.P.R. 283 (1986); Pueblo v. Sánchez Molina, 135 D.P.R. _ (1993), 93 J.T.S. 140; Cooper v. California, 386 U.S. 58 (1962); Colorado v. Bertine, 479 U.S. 367 (1987); (9) el registro se da en el transcurso de una persecución, ("hot pursuit"), Pueblo v. Rivera Colón, 129 D.P.R. _ (1991), 91 J.T.S. 61; Pueblo v. Santiago Alicea, 138 D.P.R. _ (1995), 95 J.T.S. 45.
En lo pertinente al caso que nos ocupa y en cuanto a la excepción relacionada a la doctrina conocida como "prueba ilegal a plena vista" (plain view doctrine), debemos añadir además, que ésta aplica siempre que estén presentes las siguientes circunstancias: (1) el artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro; 2) el agente que observa la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verse tal prueba; 3) la naturaleza delictiva del objeto debe surgir de la simple observación; y 4) debe descubrirse el objeto inadvertidamente. Pueblo v. Dolce, 105 D.P.R. 422, 436 (1976); Horton v. California, 496 U.S. 128 (1989).
Por otro lado, nuestro Tribunal Supremo ha resuelto que la protección constitucional contra registros y allanamientos irrazonables se extiende a vehículos de motor. Pueblo v. Sosa Díaz, 90 D.P.R. 622 (1964). Ahora, por considerarse el registro de un vehículo de motor una "intrusión mucho menor a la de una propiedad o residencia, la expectativa de intimidad (privacy) de una persona en el mismo es mucho menor. Esto es, debido a la diferencia conceptual y funcional entre una residencia o estructura (uso y ubicación fijos) y la movilidad y reglamentación relacionada a vehículos de motor, la expectativa de privacidad en éstos es mucho menor." Pueblo v. Rivera Rivera, 117 D.P.R. 283 (1986); Pueblo v. Malavé González, 120 D.P.R. 470, 480 (1988); Pueblo v. Cruz Torres, supra.
Así pues, la doctrina jurisprudencial ha evolucionado para permitir los registros de vehículos de motor sin orden judicial contemporáneos a un arresto, en virtud de las siguientes justificaciones: (a) ocupar armas y otros objetos que puedan ser utilizados para atacar a los agentes del orden público, o intentar una fuga; (b) evitar la destrucción de evidencia, situación que podría ocurrir si las armas o la evidencia se hallan en la persona del sospechoso o en sus cercanías inmediatas. (Enfasis nuestro). Pueblo v. Costoso Caballero, 100 D.P.R. 147 (1971).
Específicamente, la regla establecida en Sosa Díaz, supra, impide el registro de un vehículo sin previamente haberse obtenido un mandamiento judicial a esos fines sólo en casos de: (a) una infracción menor de tránsito, y (b) en ausencia de circunstancias especiales. Es decir, una mera infracción menor de tránsito no justifica el registro de un automóvil sin una orden de allanamiento, más circunstancias especiales pueden proveer la justificación necesaria, en adición a dicha infracción, para realizar dicho registro. De igual forma, se resolvió en Pueblo v. De Jesús Robles, 92 D.P.R. 345, 359 (1965), donde se autorizó el registro sin orden de un vehículo y, al así resolver, nuestro Tribunal Supremo expresó que la razonabilidad de dicho registro dependía de los "hechos y circunstancias —la atmósfera total— del caso". La razonabilidad del registro de un automóvil sin orden judicial depende de que haya causa probable para intervenir con el mismo y de que existan unas circunstancias especiales que provean la justificación necesaria para el registro. Véase, además, Pueblo v. Malavé González, supra.
Todo ciudadano que se considere agraviado o afectado por un allanamiento o registro ilegal podrá solicitar del tribunal correspondiente, la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro. Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. IIR. 234. En Pueblo v. Ramos Santos, supra, se estableció que al analizar una solicitud de supresión de evidencia hay que determinar:

"(1) si el acusado que la solicita tiene capacidad para invocar la regla de exclusión, 

(2) si en ausencia de orden, le era posible al Estado obtenerla sin comprometer la eficacia del registro o la seguridad de sus agentes, y

(3) la razonabilidad del registro." (Enfasis nuestro). Véase además Pueblo v. Lebrón, supra; Pueblo v. Rosa Ramírez, supra.
*788 Por otro lado, la Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. IIR. 11 dispone que:

"Un funcionario del orden público podrá hacer un arresto sin la orden correspondiente:

(a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario el funcionario deberá solicitar que se expida una orden de arresto.

(b) Cuando la persona arrestada hubiese cometido un delito grave (felony), aunque no en su presencia.

(c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independientemente de que dicho delito se hubiere cometido o no en realidad." (Enfasis nuestro)
Motivos fundados se ha definido como aquella información y conocimiento que lleven a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito independientemente de que luego se establezca o no la comisión del delito. Dicha frase es sinónimo de causa probable, término utilizado en el contexto de la expedición de una orden de arresto.
Ahora, en relación al caso que nos ocupa y en cuanto a motivos fundados se refiere, nuestro. Tribunal Supremo ha expresado que la exigencia de tales motivos no impide que los agentes del orden público actúen en forma coordinada y concertada en la persecución de un crimen. El conocimiento de cada agente cuando trabajan cerca y se mantienen informados es atribuible a los demás. Se puede establecer la existencia de causa para justificar un arresto sin orden, basado en información policíaca colectiva al momento del mismo siendo innecesario que el oficial que lleva a cabo el arresto lo haga únicamente a base de su conocimiento personal de las circunstancias. Basta con que el agente de la policía que inició la cadena de comunicaciones tenga información de primera mano. La labor policíaca se vería entorpecida si los agentes estuvieran impedidos de actuar a base de instrucciones, de órdenes y de información que se transmiten de un agente a otro, no sólo de persona a persona, sino a través de cualquier medio de comunicación especialmente cuando se trata del sistema oficial de radioteléfono. Lo contrario propiciaría la fuga del sospechoso, frustrando la gestión de la policía. Un policía puede actuar a base de información provista por otro mienbro de la fuerza, pudiendo simplemente asumir la confiabilidad y certeza de lo comunicado. Sin embargo, cuando se cuestiona la validez de esta actuación en el contexto de una moción de supresión de evidencia, es necesario presentar evidencia para establecer los motivos fundados del agente que dio la orden u originó la cadena de información que tuvo como resultado la orden de arresto. El hecho de que un agente pueda actuar a base de una comunicación de otro policía, sin tener motivos fundados, no significa que el Ministerio Público queda relevado de su deber de presentar evidencia para establecer la legalidad del arresto. Pueblo v. Martínez Torres, 120 D.P.R. 496 (1988).
IV
En el presente caso, de entrada cabe señalar que no nos cabe la menor duda de que Rodríguez tenía legitimación activa para solicitar la supresión de la evidencia que pretende ofrecer en su contra el Ministerio Público. No obstante, ningún mérito podemos atribuirle a su argumento relativo a la ausencia de motivos fundados por parte del agente Algarín para realizar su arresto y la consecuente incautación de la evidencia. Veamos.
Tanto de la declaración del agente Candelaria como de la declaración del agente Algarín se desprende la suficiencia de los motivos fundados necesarios para intervenir y arrestar a Rodríguez sin la usualmente requerida orden de arresto. Es decir, surge del escrito de oposición del Ministerio Público a la moción de supresión de Rodríguez, que el primero presentó evidencia en la vista preliminar en alzada en cuanto a que Rodríguez fue visto por el agente Candelaria comprando marihuana en Turabo Heights. El agente Candelaria se encontraba en ese sector prestando vigilancia y, de hecho, observó allí alrededor de cinco (5) transacciones. Al observar lo que el entendió que era una transacción de sustancias controladas —acto ilegal — , según su experiencia, transmitió su observación a sus compañeros agentes que estaban en los alrededores, siendo el agente Algarín uno de ellos. La *789 información transmitida incluyó la marca, el color, y la tablilla del vehículo utilizado en la compra de la sustancia controlada. Así también incluyó una descripción con lujo de detalles de la persona que hizo dicha compra, esto es, se le brindó información relacionada a la vestimenta del sospechoso. Esta información fue más que suficiente para que el agente Algarín interviniera con Rodríguez. Esto es, en el presente caso no se interviene con el vehículo de Rodríguez por éste haber cometido una infracción menor de tránsito sino por unas circunstancias que ciertamente justificaban la intervención de los agentes con dicho vehículo. Véanse: Pueblo v. Malavé González, supra; Pueblo v. Sosa Díaz, supra.
Entendemos, pues, que el Ministerio Público estableció la existencia de causa para justificar el arresto de Rodríguez por parte del agente Algarín sin orden previa, basada dicha causa o motivos fundados en la información que le fuera suministrada por el agente Candelaria. Ello por razón de que el conocimiento que tenía el agente Candelaria sobre la actividad delictiva de Rodríguez era atribuible al agente Algarín. Es decir, la causa • probable o motivos fundados se basó en información policíaca colectiva, que se inició con la información de primera mano que transmitió el agente Candelaria por radio a sus compañeros agentes. Pueblo v. Martínez Torres, supra.
En cuanto a la legalidad de la evidencia incautada, nótese que dicha incautación no surge como consecuencia de un registro a la persona de Rodríguez o de su vehículo, lo que según expuesto anteriormente se hubiere justificado debido a la información que ya había sido suministrada por Candelaria a Algarín sino que en adición dicha evidencia se encontraba a plena vista. Es decir, contrario a lo argumentado por Rodríguez, tampoco incidió el tribunal de instancia al aplicar la doctrina conocida como "prueba ilegal a plena vista (plain view doctrine)". Veamos.
En primer lugar, no debe caber la menor duda de que el agente Algarín, quien efectuó el arresto, descubrió la evidencia incautada por haber estado ésta a plena vista; esto es, como expresáramos antes, dicha evidencia no fue descubierta por razón de un registro a la persona de Rodríguez ni al vehículo que éste conducía sino que la misma fue "vista" por el agente entre las piernas de Rodríguez tan pronto éste se acerco al vehículo para conversar con éste En segundo lugar, tampoco debe caber la menor duda de que el agente Algarín tenía derecho a estar en la posición desde la cual observó la evidencia. Es decir, era el deber del agente Algarín ejercer su descargo de responsabilidad de investigar la información sobre la posible comisión de un delito que fue suministrada por su compañero, el agente Candelaria, a través del radioteléfono. Pueblo v. Ortíz Martínez, supra. En cumplimiento con ese deber procedió a detener el auto conducido por Rodríguez y situarse en un lugar razonable para poder realizar su investigación y de donde desafortunadamente para Rodríguez pudo observar la evidencia Pueblo v. Luzón, 113 D.P.R. 315, 326 (1982). En cuanto a la naturaleza delictiva de la evidencia incautada, debemos señalar que debido a la experiencia y familiaridad del agente Algarín con varios "puntos de drogas" de la zona y la forma en que éstos operan, en adición a la información suministrada por el agente Candelaria, fueron suficientes para éste percatarse de la naturaleza delictiva de dicha evidencia. Por último, en cuanto a si la sustancia controlada fue descubierta inadvertidamente, entendemos que sí. Es decir, el agente Algarín no registró un lugar particular del vehículo o de Rodríguez para encontrar dicha sustancia sino que "inadvertidamente" se topó con ésta, al verla en el asiento entre las piernas de Rodríguez, conductor del vehículo.
Resolvemos en consecuencia que la intervención del agente Algarín con Rodríguez fue razonable, que la incautación de la sustancia controlada fue una legal y que esta última es, por consiguiente, admisible en contra de Rodríguez. No incidió, pues, el Tribunal de Primera Instancia, Sala Superior de Caguas, al denegar la moción de supresión de evidencia presentada por Rodríguez.
Por los fundamentos expresados, se deniega la expedición del auto solicitado, y se ordena la devolución del caso a dicho tribunal para la continuación de los procedimientos consistentes con lo aquí resuelto.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*790 ESCOLIO 97 DTA 186
1. Esto es, el imputado que solicite la supresión de la evidencia que ha de ser ofrecida en su contra y alegue violación a su protección constitucional contra registros y allanamientos irrazonables, tiene que tener legitimación activa para solicitar la supresión; es decir, tiene que tener una expectativa legítima a la intimidad en relación con el lugar registrado. Pueblo v. Ramos Santos, supra; Pueblo v. Vargas, supra, (1976); Pueblo v. Lebrón, supra, (1979); U.S. v. Salvucci, 448 U.S. 83 (1980); Rakas v. Illinois, 439 U.S. 128 (1978).