Rivera Pérez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
¿Es improcedente el despido de un empleado gerencial de la Compañía de Fomento Industrial de Puerto Rico, por motivo de no cumplir con su horario de trabajo, alterar sus hojas de asistencia y observar conducta constitutiva de insubordinación y desobediencia a las órdenes de sus supervisores? Este es el asunto que trae el presente recurso ante nos. Se expide el auto solicitado y se confirma la *1083 resolución recurrida.
I
El señor José Ramón Rivera, parte recurrente, ocupó el puesto..de Sub-auditor General en la Oficina de Auditoría de la Compañía de Fomento Industrial de Puerto Rico, desde el 1 de julio de 1985 hasta el 15 de julio de 1995, cuando fue destituido. El puesto de Sub-auditor General es una posición de carrera clasificado como gerencial. Entre las funciones del recurrente, como Sub-auditor General, estaban las de coordinar y planificar el trabajo de la Oficina de Auditoría con el Auditor General, y la supervisión operacional de los auditores y su reclutamiento. Para mayo de 1993, la Oficina de Auditoría estaba compuesta por un Auditor General, dos Sub-auditores Generales, un Oficial Administrativo-(todos gerenciales), diez auditores y dos secretarias (todos unionados).
El 16 de mayo de 1996 el señor Héctor Bonet Fernández fue nombrado para ocupar la plaza de Auditor General de la Compañía de Fomento Industrial de Puerto Rico (de ahora en adelante Compañía). Dicho puesto es uno dentro del servicio de confianza. El señor Bonet era el jefe y supervisor inmediato del señor Rivera, aquí recurrente.
Los auditores unionados de la Compañía poseen un horario flexible, por virtud del convenio colectivo que se negoció con la Unión. Ello comprende, que los auditores escogen un horario y, una vez escogido, tienen que cumplir con el mismo. Constituye un derecho de esos empleados establecido en el convenio colectivo. Pueden optar por un horario de 7:30 A.M a 11:45 A.M y de 12:45 P.M. a 4:00 P.M., de 8:00 A.M. a 11:45 A.M. y de 12:45P.M. a 5:00 P.M., o de 8:45 A.M. a 11:45 A.M. y de 12:45 P.M. a 5:45 P.M. Su jomada de trabajo es de siete horas y media (7 1/2 hrs.). Tienen que firmar hojas de asistencia y señalar la hora de entrada y de salida del período de la mañana y del período de la tarde.
La jomada diaria de trabajo de los empleados gerenciales de la Compañía comprende un máximo de siete horas y media. Su horario regular es de 8:00 de la mañana a 11:45 de la mañana y de 12:45 de la tarde a 4:30 de la tarde. Estos empleados sólo inician su hoja de asistencia por la mañana cuando llegan y por la tarde cuando salen. Tienen un período de merienda de 15 minutos por la mañana y otro de 15 minutos por la tarde.
En junio de 1993 el señor Bonet le llamó la atención al señor Rivera oralmente y por escrito, por motivo de sus tardanzas, en vista de que llegaba a su trabajo después de las 8:00 de la mañana, y después de la hora de entrada por la tarde, o sea, las 12:45. Le señaló cuál era su horario de trabajo Mediante cartas cursadas al señor Rivera por el señor Bonet el 6 y 14 de julio de 1993, le informó nuevamente su horario de trabajo y los ajusfes realizados a sus vacaciones regulares con motivo de sus tardanzas.
El señor Rivera, aquí recurrente, alegó ante la agencia que gozaba del privilegio de horario flexible y, por ende, no tenía que cumplir con el horario regular de entrada y de salida de la compañía. Por tal razón, él alegó que podía llegar después de las 8:00 de la mañana a su trabajo. La pmeba ofrecida y admitida por la agencia demostró, que el 30 de marzo de 1994 el señor Rivera llegó a su trabajo después de las 8:00 de la mañana y anotó en su hoja de asistencia las 8:00 de la mañana, como su hora de llegada. El Oficial Examinador determinó como probado, que el 28 de junio de 1993 el señor Rivera llegó 40 minutos después de su hora de entrada por la mañana y 20 minutos después de su hora de entrada por la tarde. El 2 de julio de 1993 llegó 30 minutos después de su hora de entrada por la mañana. El 14 de julio de 1993 llegó 25 minutos después de su hora de entrada por la mañana y 20 minutos después de su hora de entrada por la tarde. El 15 de julio de 1993 llegó 20 minutos después de su hora de entrada por la mañana. Esa hoja de asistencia fue alterada por el señor Rivera, luego de ser certificada por el señor Bonet. El señor Rivera testificó en la vista administrativa, que a pesar de haber recibido instmcciones de su supervisor sobre su horario regular de trabajo, lo que correspondía era anotar el horario regular en la hoja de asistencia, independientemente de la hora que realmente llegaba. El señor Rivera declaró que anotaba la hora de entrada y salida de una sola vez.
El 5 de octubre de 1993 el señor Rivera recibió un memorando del Presidente de la Compañía, señor Woodroffe, indicándole que desde el 11 de octubre de 1993 en adelante estaría obligado a señalar en su hoja de asistencia su hora de llegada y de salida del trabajo. Así lo admitió el señor *1084 Rivera durante la vista administrativa. En dicho memorando el señor Rivera fue advertido que de no cumplir con lo allí ordenado, se procedería a aplicar las medidas disciplinarias establecidas en el Reglamento de Personal de la Compañía. El señor Rivera le contestó el 11 de octubre de 1993 al Presidente de la Compañía su memorando. Le expresó que consideraba que su decisión no era la correcta, pero que cumpliría con sus instrucciones. La prueba desfilada en la vista administrativa demostró que el señor Rivera no cumplió con tales instrucciones. El señor Rivera no cumplió con la orden de señalar su hora de entrada y salida a su trabajo. Continuó con su práctica de llegar tarde a su trabajo por la mañana y de anotar en su hoja de asistencia una hora distinta a la que realmente había llegado, Tal prueba demostró igual patrón de conducta durante sus horas de llegada y de salida por la tarde. La prueba desfilada demostró que el señor Rivera alteró sus horas de entrada y salida, luego que fueron certificadas por su supervisor, el señor Bonet.
El 11 de octubre de 1993 el señor Rivera se acogió a una licencia por enfermedad. Regresó a su trabajo el 6 de diciembre de 1993. El 7 de diciembre de 1993 se reportó al Fondo del Seguro del Estado. Regresó el 1 de marzo de 1994 a su trabajo en la Compañía.
El señor Bonet le informó a la señora Edna Martínez, Directora de Personal de la Compañía, que el señor Rivera llegaba tarde al trabajo, no reflejaba la hora de entrada y salida y había alterado las hojas de asistencia, luego que éstas fueron certificadas. El señor Bonet le envió a la señora Martínez memorandos escritos el 27 de julio de 1993, 23 de septiembre de 1993 y el 20 de marzo de 1994. En virtud de esas comunicaciones, el Departamento de Personal de la Compañía procedió a realizar la investigación correspondiente. Concluida la investigación, la señora Martínez envió el 9 de mayo de 1994 memorando a la señora Victoria Hernández Maldonado, Vice-Presidenta de Administración. La señora Hernández Maldonado le recomendó al Presidente de la Compañía la formulación de cargos contra el señor Rivera, por no cumplir con su horario regular de llegada y salida a su trabajo; por haber falsificado el récord de asistencia de los días 23 y 30 de marzo de 1994; por haber incurrido en conducta constitutiva de insubordinación al asumir una actitud de desobediencia; al negarse a acatar las instrucciones del supervisor; por hacer uso excesivo del período de merienda; y por haber violado la orden o directriz contenida en el Memorando Informativo Número 31-93 de 28 de julio de 1993. Dicha recomendación fue acogida por el Presidente de la Compañía. El 27 de mayo de 1994 se formularon cargos contra el señor Rivera. El señor Rivera negó los hechos imputados y la Compañía designó un Oficial Examinador para la vista informal. La Compañía adoptó el 15 de junio de 1995 la recomendación del Oficial Examinador contenida en su informe del 7 de mayo de 1995, de destituir al recurrente de su puesto de Sub-auditor General, al determinar que el señor Rivera falsificó las hojas de asistencia de la Compañía; incurrió en conducta constitutiva de insubordinación al negarse a cumplir órdenes de sus supervisores, señor Bonet y del Presidente de la Compañía, señor Woodroffe; y por violar las órdenes y directrices administrativas impartidas en el Memorando Informativo Número 31-93 de la Compañía. Fue presentada moción de reconsideración que fue acogida y resuelta el 30 de junio de 1995, siendo notificada en esa misma fecha.
El recurso ahora ante nos fue presentado ante el Tribunal de Primera Instancia, Sala Superior de San Juan, el 26 de julio de 1996. 
II
La parte recurrente señala como errores cometidos por la agencia los siguientes:

"1. Erró la C.F.I.P.R, al destituir al recurrente sin justa causa y contrario a derecho y basado en determinaciones de hechos que no se sostienen en el expediente administrativo.

2. Erró la C.F.I.P.R., al violar el debido proceso de ley en la vista administrativa que resultó en la destitución del recurrente.

3. Erró la C.F.I.P.R., como cuestión de derecho de que el Memorando 7-75 de 14 de octubre de 1975 de la C.F I.P R., está derogado."

La revisión judicial que ha de realizar este Tribunal de la resolución recurrida se ha de limitar al expediente de la agencia y al récord recogido durante el transcurso del procedimiento adjudicativo. 
*1085 El señor Rivera arguye ante nos, que su destitución fue realizada en contravención a la evidencia sustancial contenida en el expediente administrativo. ¿Encuentran las determinaciones de hechos formuladas por la Compañía, al determinar sobre la destitución del recurrente, su razón de ser en la evidencia ofrecida y admitida por el Oficial Examinador y en todo aquello que transcurrió durante la audiencia celebrada? Entendemos que así es. Veamos.
Los procedimientos y las decisiones de un organismo administrativo tienen a su favor una presunción de regularidad y corrección que debe ser respetada, mientras la parte que la impugne en un procedimiento de esta naturaleza no señale la evidencia que surge del expediente administrativo que la derrote. La parte aquí peticionaria no ha logrado rebatir tal presunción. Su argumento, de que su destitución fue realizada contraria a la evidencia sustancial contenida en el expediente administrativo, es improcedente.
La norma establecida en Puerto Rico por nuestro más alto Tribunal sobre la legitimación de las determinaciones de hechos descansa en una base racional, consistente en que al existir conflictos de prueba el tribunal apelativo no debe intervenir con tales determinaciones realizadas por la agencia administrativa, cuando las mismas están sostenidas con evidencia sustancial. La regla de la evidencia sustancial se ha convertido en la norma dominante para la revisión de determinaciones de hechos en los procesos administrativos federales y estatales. La definición de evidencia sustancial está ingredida de la figura del hombre prudente y razonable. La regla de la evidencia sustancial es una que rebasa la norma de cantidad de la evidencia. La evidencia debe ser considerada en su totalidad, incluyendo aquella que reduzca o menoscabe el peso que la agencia le haya conferido, como también la que lo sostenga. La evidencia sustancial se considera menos que la preponderancia de la evidencia. No obstante, la decisión de la agencia tiene que sostenerse por más de una mera scintilla de la evidencia. De existir dos interpretaciones, la selección de la agencia debe prevalecer. La cuestión es, si las determinaciones de hechos de la agencia son razonables y no si la agencia logró la determinación correcta del hecho o los hechos. Presupone que las determinaciones de hechos de la agencia administrativa deben tener base racional en la prueba. 
El hombre prudente y razonable podría llegar a varias conclusiones o determinaciones de hechos respecto a un asunto o controversia. En el caso de autos, no podríamos concluir que las determinaciones de hechos de la Compañía y su decisión de destituir al recurrente sea una contraria a la regla de la evidencia sustancial. No es irrazonable tal decisión, a base de la totalidad de la prueba presentada ante la agencia. No podemos intervenir con la conclusión de la agencia, a los efectos de que el señor Rivera, aquí recurrente, incumplió con su deber y responsabilidad de asistir regular y puntualmente al trabajo y de completar su jomada regular de trabajo establecida por la Compañía. Tampoco es irrazonable la conclusión de que la Compañía intentó infructuosamente, en varias ocasiones, que el señor Rivera corrigiera su conducta.
No podemos intervenir con la conclusión de la agencia, a los efectos que el señor Rivera falsificó su hoja de asistencia al señalar la hora incorrecta de entrada y salida de su trabajo. La interpretación que a su conducta le ha adjudicado el propio señor Rivera, no convierte en incorrecta la que le ha adjudicado la Compañía. Es totalmente razonable la conclusión, de que probada la alteración de esos documentos en varias ocasiones por el señor Rivera, tal conducta constituye la falsificación que contemplan las Medidas Disciplinarias del Reglamento de Personal de la Compañía, supra, tal interpretación, bajo las circunstancias de este caso, es la que le podría adjudicar un hombre razonable y prudente. Surgen del expediente los esfuerzos de oficiales de la Compañía para que el señor Rivera abandonara tal conducta. Continuó alterando su hoja de asistencia. Sin embargo, Tal proceder ocurrió en más de tres ocasiones.
El señor Rivera no cumplió con las órdenes y directrices impartidas por su supervisor inmediato, con aquellas impartidas directamente por el Presidente de la Compañía y con aquellas impartidas en el Memorando Informativo Número 31-93 de la Compañía. Tal conducta está ampliamente establecida como incurrida en más de tres ocasiones por el aquí recurrente. Igualmente, la conducta constitutiva de insubordinación está ampliamente establecida como incurrida por él en más de dos ocasiones.
La Compañía tomó las medidas preventivas adecuadas. Realizó gestiones en forma verbal y *1086 escrita, resultando infructuosos sus esfuerzos para que desistiera de su conducta violatoria a las disposiciones de su Reglamento de Personal, supra. Ejemplo de esas medidas, entre otras, es el memorando que le envió el Presidente de la Compañía al aquí recurrente el 5 de octubre de 1993, comunicándole directrices específicas dirigidas a que corrigiera su conducta. Además, en la opinión legal de fecha del 13 de junio de 1993, cursada al señor Rivera por el licenciado Edgardo Martínez Nazario, Secretario y Asesor Legal Interino de la Compañía, a solicitud suya, se le informó su horario regular de trabajo y que no estaba excluido de sanciones disciplinarias por no cumplir con el mismo. También se le informó que su supervisor podía proceder a descontarle de sus vacaciones regulares el tiempo consumido en las tardanzas. Se le aclaró que su supervisor tenía la facultad de solicitar a la autoridad correspondiente que se le eliminara el privilegio de no evidenciar, como los demás empleados de carrera, su hora de entrada y salida. No obstante dichas medidas preventivas, el señor Rivera continuó incumpliendo con su horario regular de trabajo y violando disposiciones del Reglamento de Personal de la Compañía.
¿Es la medida de destitución de empleo tomada contra el señor Rivera, aquí recurrente, una justificada y conforme a derecho? Entendemos que así es. Veamos.
Las disposiciones del Reglamento de Personal de La Compañía son aplicables a sus empleados de carrera no cubiertos por convenios colectivos. El aquí recurrente era un empleado gerencial de carrera en la Compañía. Su permanencia dependía siempre que satisfaciera los criterios de productividad, eficiencia, orden y disciplina que deben prevalecer en el servicio público. Tales empleados deben cumplir con sus deberes y responsabilidades, que comprenden su asistencia regular y puntual al trabajo, el cumplimiento cabal de su jomada de trabajo, el cumplimiento de las órdenes e instrucciones de sus supervisores y de las disposiciones del Reglamento de Personal, supra, y de las reglas y órdenes dictadas en virtud del mismo. La Compañía tomará las medidas disciplinarias correctivas necesarias, cuando la conducta del empleado no se ajuste a las normas establecidas. Podrá considerar la amonestación verbal, las reprimendas escritas, las suspensiones de empleo y sueldo y las destituciones. Pueden ser motivo de acción disciplinaria contra el empleado, que éste falte a cualquiera de los deberes y obligaciones mencionados anteriormente. Es deber del supervisor adoptar medidas preventivas antes de imponer una medida disciplinaria. Se considerará como infracción a las normas de conducta de la Compañía, todo acto u omisión relacionado con las violaciones que se señalan como ejemplos en el Anexo del Reglamento de Personal, supra, como medidas disciplinarias. Esas medidas no son consideradas como exhaustivas, sino como ilustrativas. 
Cuando un empleado de la Compañía incurre en alguna falta de las contempladas en forma ilustrativa en el Reglamento de Personal, supra, su supervisor inmediato someterá un informe al Director de Personal conteniendo los hechos sobre las faltas cometidas. El Director de Personal evaluará el informe y, de creerlo necesario, conducirá su propia investigación con el propósito de recomendar al Vice-Presidente correspondiente la formulación de cargos contra el empleado. El Vice-Presidente a cargo de la Oficina de Personal podrá solicitar una nueva investigación y rendirá un informe escrito al Presidente con su recomendación sobre la formulación de cargos. El Presidente notificará por escrito al empleado la formulación de los cargos. Deberá informarle de su derecho a una vista administrativa informal dentro de quince (15) días laborables, a partir de la notificación de la formulación de cargos. La vista se celebrará ante un Oficial Examinador. El empleado tiene derecho a estar representado por abogado y tiene el derecho a presentar prueba y a contrainterrogar los testigos que presente la Compañía. El Oficial Examinador someterá al Presidente de la Compañía su informe, conteniendo lo determinado como cuestión de hecho, con sus conclusiones y recomendaciones El Presidente de la Compañía puede aceptar o rechazar las recomendaciones del Oficial Examinador. El empleado puede revisar cualquier decisión del Presidente a los tribunales dentro de treinta (30) días, a partir del recibo de la notificación de la decisión. 
El aquí recurrente implícitamente nos alega que la agencia debió utilizar medidas disciplinarias menos drásticas. Nos expresa directamente que su destitución fue un castigo desproporcionado, considerando las faltas que se intentaban corregir. No podemos acoger tal planteamiento. El récord de este caso demuestra claramente todo lo contrario. La agencia optó por utilizar antes de su destitución medidas disciplinarias en su contra, consistentes en amonestaciones verbales y reprimendas escritas, de forma progresiva, sin obtener resultado alguno. Concluimos, que la agencia recurrida cumplió con *1087 las normas de derecho sustantivo y procesal dispuestas en su reglamento.
No fue cometido el primer error señalado.
¿Se violó por la agencia recurrida el debido procedimiento de ley durante la vista administrativa que resultó en la destitución del recurrente? La contestación es en la negativa. Veamos.
El señor Rivera sostiene que se le violó su derecho a un debido procedimiento de ley, porque durante la vista administrativa se pasó prueba sobre hechos ocurridos con posterioridad a la formulación de los cargos en su contra. Arguye, que esos hechos no estaban "tipificados" en esa formulación de cargos. La Compañía argumenta que la prueba que presentó ante el Oficial Examinador reflejaba un patrón de conducta del recurrente que evidenciaba las violaciones al Reglamento de Personal, supra, que ya habían sido notificadas en la correspondiente formulación de cargos. Pretende el aquí recurrente que su conducta posterior a la formulación de los cargos, indicativa de su patrón de conducta violatoria a sus deberes y obligaciones como empleado, no pueda considerarse a los efectos de determinar su patrón de incumplimiento reiterado al mencionado reglamento. No podemos acoger tal argumento.
El requisito de ser oído implica el haber sido notificado de la violación que se le imputa. En el caso de marras se le imputó al aquí recurrente no cumplir con múltiples deberes y obligaciones que tenía como empleado. Fue adecuadamente notificado de las mismas. Concluimos que la agencia le concedió al aquí recurrente una oportunidad razonable para contestar y prepararse para defenderse en la vista celebrada, que fue una de naturaleza informal. Del récord surge evidencia suficiente para sostener la decisión de la agencia de destituir al aquí recurrente por conducta violatoria a sus deberes y obligaciones incurrida con anterioridad a la formulación de los cargos, y que comprendían los notificados con anterioridad a la celebración de la vista. La prueba presentada durante esa vista para establecer un patrón de conducta del aquí recurrente de violación al reglamento posterior a la formulación de los cargos, tiene el efecto de corroborar la prueba sobre sus actuaciones anteriores a la formulación de los cargos.
El segundo error señalado no fue cometido.
El último señalamiento de error del recurrente, a los efectos que el Memorando 7-75 estaba vigente a la fecha de los hechos del caso de autos, y que en virtud del mismo él no tiene que indicar la hora de entrada y salida a su trabajo en la hoja de asistencia, y que está exento de las disposiciones del Reglamento de Personal, supra, sobre las tardanzas de los empleados, es inmeritorio. El artículo 14 del Reglamento de Personal, supra, en sus secciones 14.1 y 14.2 dispone lo siguiente:

"Sección 14.1 Horas de trabajo

A. La semana regular de trabajo y las horas de entrada y salida para los empleados de la Compañía serán establecidas por el Presidente y Gerente General, quien podrá cambiar dicho horario de acuerdo a las necesidades del servicio. La jornada regular de trabajo no excederá de cinco (5) días a la semana ni de siete y media (7-1/2) horas diarias. ,

Sección 14.2 Asistencia

A. El Presidente y Gerente General tendrá la facultad de adoptar y cambiar la reglamentación que estime conveniente para registrar la asistencia de los empleados."

Todos los memorandos informativos aprobados por la agencia que obran del expediente posteriores al Memorando Informativo 7-75 aprobado en el año 1975, indican el horario regular de los empleados gerenciales de carrera. Esos documentos exhortan a los supervisores a cumplir con el horario regular de trabajo de la Compañía. Mediante el memorando que el Presidente de la Compañía le envió al señor Rivera el 5 de octubre de 1993, se le impartieron instrucciones específicas de como éste debía registrar su asistencia para evidenciar su cumplimiento al horario regular de trabajo de la Compañía. El señor Rivera no cumplió con lo requerido, a pesar de haberse comprometido a ello como parte de las medidas preventivas que se tomaron para conseguir que el señor Rivera corrigiera su conducta de *1088 clara insubordinación.
El tercer error señalado no fue cometido.
IH
Por los fundamentos antes expuestos, se expide el auto y se confirma la resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 61
1. Alegó tal derecho bajo lo dispuesto en el Memorando 7-75 de 14 de octubre de 1975 de la Compañía de Fomento Industrial de Puerto Rico.
2. Reglamento de Personal de la Compañía de Fomento Industrial de Puerto Rico, vigente desde el 16 de noviembre de 1983.
3. Le imputaron violaciones a los incisos (24), (25) y (26) del Anexo sobre Medidas Disciplinarias del Reglamento de Personal, supra.
4. Artículo 9.004(a) de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada por la Ley 248 del 25 de diciembre de 1995.
5. Véase sección 3.18 de la Ley Número 170 del 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. § 2168.
6. Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987)
7. Rodrigo v. Tribunal Superior, 101 D.P.R. 151 (1973); Robledo Alcalde v. C.V.O.M., 96 D.P.R. 1, 17 (1967); Sucesión A. Bernart v. Peñagarícano, 84 D. P.R. 526, 531 (1962) y Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670 (1954).
8. Véase Davis, Administrative Law Treatise, sec. 29.5 (1984); B. Schwatz, Administrative Law, sec. 10.2 (2 ed 1984); Fernández Quiñones, Demetrio, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, see. 9.4, pág. 527.
9. Id., pág. 530.
10. Id., págs. 530-531.
11. Artículo 3 del Reglamento de Personal de la Compañía,
12. Artículo 10, sección 10.1 (a), Id.
13. Artículo 10, sección 10.1 (B) (1), (4) y (8).
14. Artículo 10, sección 10.2 (A), Id.
15. Artículo 10, sección 10.2 (b) (7), Id.
16. Artículo 10, sección 10.3 (A) (2), Id.
17. Artículo 10, sección 10.3 (B) (1), Id.
*1089 18. Artículo 10, sección 10.3, Id.
19. La sección 3.1 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. § 2151; Fernández Quiñonez, Demetrio, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, see. 6.7, pág. 301.