Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| EL PUEBLO DE PUERTO RICO<br>Recurrido<br><br>v.<br><br>HÉCTOR ALEJANDRO ROSADO MATÍAS<br>Peticionario | KLCE202401093 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Crim. Núms. ISCR202300658, ISCR202300670, I1CR20200208<br><br>Sobre:<br>Art. 401 Ley 4 (2);<br>Art. 412 Ley 4;<br>Art. 6.05 Ley 168 (5);<br>Art. 612 Ley 168;<br>Art. 6.22 Ley 168 (4);<br>Desacato Criminal |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Juez Ponente, Adames Soto

## SENTENCIA

En San Juan, Puerto Rico, a 23 de mayo de 2025.

Comparece el Sr. Héctor Alejandro Rosado Matías (parte peticionaria o señor Rosado Matías), mediante recurso de *certiorari,* solicitando que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI), el 4 de septiembre de 2024. Mediante esta, el foro *a quo* declaró *No Ha Lugar* la *Moción de Supresión de Evidencia* presentada por la parte peticionaria.

## I. Resumen del tracto procesal

Por hechos acaecidos el 14 de enero de 2023 se presentaron varias denuncias contra el señor Rosado Matías, imputándole haber infringido las siguientes disposiciones de ley: Arts. 401 y 412 de la Ley Núm. 4 del 23 de junio de 1971, Ley de Sustancias Controladas de Puerto Rico, 24 LPRA secs. 2401 y 2412 (Ley Núm. 4-1971), Arts. 6.05, 6.12 y 6.22 de la Ley de

Armas de Puerto Rico de 2020, 25 LPRA secs. 466d, 466k y 466u (Ley Núm. 168-2019).

Superada la vista preliminar[1], y presentadas las acusaciones correspondientes, la parte peticionaria presentó una *Moción de Supresión de Evidencia Sin Orden de Registro o Allanamiento*. En síntesis, arguyó que la evidencia que se le ocupó, (armas de fuego y drogas), fue obtenida ilegalmente, por no haber mediado una orden de registro, siendo producto de un testimonio estereotipado. Además, sostuvo que la intervención estuvo basada en una alegada confidencia, sobre violación de condiciones a la oficina del *Programa de Servicios con Antelación al Juicio*, (PSAJ), que no fue investigada.

En respuesta, el Ministerio Público presentó *Oposición a Moción de Supresión de Evidencia sin Orden de Registro o Allanamiento*. Esgrimió allí las siguientes razones por las cuales el TPI debía denegar acoger la referida moción de supresión de evidencia: que no cumplía con la especificidad requerida; que el agente Lorenzo declaró sobre la confidencia que obtuvo y corroboró sobre la manipulación del grillete que tenía el peticionario, proveyendo motivos fundados; que no resultaba necesario obtener una orden de registro y allanamiento para ocupar la evidencia en este caso, toda vez que el señor Rosado Matías, huyendo de la policía, la dejó abandonada. Sobre el presunto testimonio estereotipado, afirmó que lo declarado por el Agte. Investigador incluyó detalles sobre su intervención, además de contestar todas las preguntas que se le hicieron durante un extenso contrainterrogatorio, librando la declaración de tal caracterización.

A raíz de ello, el foro primario celebró una vista para considerar los méritos de la solicitud de supresión de evidencia instada. Según se indica en la *Resolución*[2] emitida por el tribunal *a quo*, cuya revocación el peticionario nos solicita, dicho foro evaluó la prueba testifical presentada

---

[1] Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, R. 23.
[2] Apéndice del recurso de *certiorari*, págs. 2-18.

por el Ministerio Público, (tres testigos), más la prueba documental (nueve *exhibits*), junto al contrainterrogatorio efectuado por la defensa a dicha prueba, antes de concluir *Denegar* la solicitud de supresión de evidencia. Al así actuar, el TPI enumeró cuarenta y seis determinaciones de hechos, para, luego de exponer el derecho que estimó pertinente, y explicar su valoración de la prueba, determinar que la Policía de Puerto Rico tuvo motivos fundados para intervenir con el recurrido, siendo legal la incautación de la evidencia sin orden y el arresto del recurrido. En específico, el foro recurrido consignó haberle conferido credibilidad al testimonio del Agte. Lorenzo Bonet, siendo uno detallado, además de corroborado por el testimonio de la oficial de la PSAJ.

Inconforme, el señor Rosado Matías recurre ante nosotros, mediante recurso de *certiorari*, planteando los siguientes señalamientos de error:

> Erró el TPI al declarar NO HA LUGAR la supresión de evidencia a pesar de que el Ministerio Público no rebatió la presunción de ilegalidad del registro sin orden que llevó a cabo la Policía de Puerto Rico al servirse de la data recopilada por PSAJ como parte del monitoreo electrónico o sistema de supervisión electrónica instalado como parte de las condiciones de una fianza monetaria.

> Erró el TPI al declarar NO HA LUGAR la supresión de evidencia a pesar de que el Ministerio Público no rebatió la presunción de ilegalidad del arresto sin orden y ausente de motivos fundados.

> Erró el TPI al declarar NO HA LUGAR la supresión de evidencia a pesar de que los testimonios de los agentes que intervinieron son estereotipados.

Ante lo cual, la Oficina del Procurador General de Puerto Rico, (el Procurador), en representación del Pueblo, compareció ante nosotros mediante *Escrito en cumplimiento de Orden*, oponiéndose a la solicitud del recurrido.

## II. Exposición de Derecho

### i.

La protección contra registros, incautaciones y allanamientos irrazonables es una de índole constitucional, consagrada tanto en el

Art. II, sec. 10 de la Constitución de Puerto Rico, como en la Cuarta Enmienda de la Constitución de los Estados Unidos de América.[3] La Sección aludida de nuestra Constitución dispone en específico que:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
> [...].
> Solo se expedirán mandamientos autorizando registros, allanamientos o arrestos por la autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
>
> Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.[4]

Las disposiciones constitucionales aludidas comparten tres objetivos básicos: proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias frente a actuaciones irrazonables del Estado, e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intervención con los ciudadanos. *Pueblo v. Báez López*, 189 DPR 918, 927, (2013); *Pueblo v. Díaz, Bonano*, 176 DPR 601, 611-612 (2009); *Blassini et als. v. Depto. Rec. Naturales*, 176 DPR 454, 463-464 (2009); *Pueblo v. Rodríguez Rodríguez*, 128 DPR 438, 445 (1991); *Pueblo v. Martínez Torres*, 120 DPR 496, 500 (1988); *E.L.A. v. Coca Cola Bott. Co.*, 115 DPR 197, 207 (1984); *Pueblo v. Dolce*, 105 DPR 422, 429-431 (1976).

Cónsono con lo anterior, en nuestra jurisdicción se requiere la obtención de una orden judicial previa para efectuar un registro. De ordinario, se prohíbe tanto el arresto de personas, como el que se efectúen registros o allanamientos sin una previa orden judicial, apoyada la misma en una determinación de causa probable.[5] *Pueblo v. Calderón Díaz*, 156

---

[3] Emda. IV, Const. EE.UU., LPRA, Tomo 1, ed. 2016, págs. 186-187.

[4] Art. II, Sec. 10, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 336.

[5] El término "causa probable" utilizado en la Sección 10 del Artículo II de nuestra Constitución y la Regla 231 de las de Procedimiento Criminal, *infra*, es sinónimo del término "motivos fundados" utilizado para la determinación de expedir una orden de arresto. *Pueblo v. Caraballo Borrero*, 187 DPR 265, 274 (2012); *Pueblo v. Calderón Díaz*, 156 DPR 549, 557 (2002). El concepto de motivos fundados se ha definido como tener la información y el conocimiento que llevan a una persona ordinaria y prudente a entender que la persona a ser detenida ha cometido o cometerá un delito. *Pueblo v. Serrano, Serra*, 148 DPR 173, 182–183 (1999).

DPR 549, 555, (2002). Cuando el Estado actúa sin orden judicial, el Ministerio Público viene obligado a probar que el registro realizado fue legal y razonable, que necesariamente conlleva, como requisito previo, demostrar la legalidad del arresto. *Íd.*, pág. 444.[6]

De otro lado, "[e]s norma conocida que el hecho de que un objeto haya sido incautado sin una orden previa de un tribunal, por sí solo, no conlleva la inadmisibilidad de la evidencia obtenida". *Pueblo v. López Colón,* supra*,* págs. 287-288. [E]l Estado puede demostrar que las circunstancias particulares en ese caso justificaron la intervención policial sin la referida orden, constituyéndose así alguna de las excepciones a la norma general. *Íd.*, pág. 288. Algunas de estas situaciones excepcionales son las siguientes: (1) un *registro incidental a un arresto legal*; […] (7) una *evidencia arrojada o abandonada;* […]. *Íd.*

El criterio rector para evaluar si se ha violado el derecho consagrado en la Cuarta Enmienda de la Constitución de los Estados Unidos, o en las secciones 8 y 10 del artículo II de la Constitución de Puerto Rico, es *si la persona afectada alberga una expectativa de intimidad sobre el lugar o el artículo a ser registrado y si tal expectativa es razonable a la luz de los criterios prevalecientes en la sociedad. Íd.*, a la pág. 701. De lo que se sigue que el derecho de un acusado a impugnar un registro sin orden judicial por irrazonable depende exclusivamente de si éste era acreedor a la protección constitucional, y si tenía o no una expectativa legítima de intimidad sobre el lugar que fue objeto del registro y sobre los objetos que fueron ocupados. *Pueblo v. Castro Rosario*, 125 DPR 164, 170 (1990); *Pueblo v. Narváez Cruz*, 121 D.P.R. 429 (1980). Este principio apuntala la norma de que la garantía constitucional contra registros y allanamientos irrazonables **no protege** las estructuras abandonadas; *Pueblo v. Erausquín Martínez*, 96 D.P.R. 1 (1968); **evidencia arrojada o abandonada**; *Pueblo v.*

---

[6] Comillas omitidas.

*Rivera Martínez,* 97 D.P.R. 814 (1969), y la *evidencia a plena vista, Pueblo v. Dolce,* supra. (Énfasis provisto).

ii.

Por su parte, la Regla 234 de Procedimiento Criminal, *supra,* es el medio práctico que tiene un ciudadano para hacer valer la disposición constitucional antes discutida. *Pueblo v. Serrano Reyes,* supra, pág. 446. En lo pertinente, la Regla citada dispone lo siguiente:

> La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233 la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:
> > (a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.
>
> [...]
> El tribunal vendrá obligado a celebrar una vista evidenciara con antelación al juicio, y ante un magistrado distinto al que atenderá el juicio, cuando se trate de evidencia incautada sin previa orden judicial si en la solicitud la parte promovente aduce hechos o fundamentos que reflejan la ilegalidad o irrazonabilidad del registro, allanamiento o incautación. El Ministerio Público vendrá obligado a refutar la presunción de ilegalidad del registro o incautación y le corresponderá establecer los elementos que sustentan la excepción correspondiente al requisito de orden judicial previa.
> [...]

Esto significa que en la vista evidenciaria para adjudicar la moción de supresión de evidencia, el Ministerio Público tiene la obligación de presentar prueba y persuadir sobre la razonabilidad del registro, estableciendo los elementos que sustentan la excepción al requisito de orden judicial previa. *Íd.* Lo que se decide en una vista de supresión de evidencia es la legalidad o razonabilidad del registro efectuado. *Pueblo v. Miranda Alvarado,* 143 DPR 356 (1997). El foro primario está facultado para dirimir la credibilidad de los testigos que se presenten en dicha vista. Id.

iii.

En nuestra jurisdicción, el uso de declaraciones estereotipadas por cualquier tipo de testigo, en este caso, agentes del orden público, debe ser

objeto de escrutinio riguroso para evitar que declaraciones falsas o inexactas, vulneren derechos de ciudadanos inocentes. *Pueblo v. Acevedo Estrada*, 150 DPR 84, 93 (2000). Se ha "definido el testimonio estereotipado como aquel que se ciñe a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlos". *Íd.* [L]os criterios para evaluar la credibilidad de un testimonio estereotipado:

> 1. Debe ser escudriñado con especial rigor.
> 2. Tanto los casos de "la evidencia abandonada" o "lanzada al suelo" como los casos del "acto ilegal a plena vista" deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado.
> 3. Cuando el testimonio es inherentemente irreal o improbable debe rechazarse.
> 4. El testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles.
> 5. La presencia de contradicciones o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones. *Pueblo v. Camilo Meléndez,* 148 DPR 539, 559 (1999).

iv.

La Oficina de Servicios con Antelación al Juicio (actualmente, PSAJ), se encuentra adscrita al Departamento de Corrección y Rehabilitación del Estado Libre Asociado de Puerto Rico. El Artículo 24 del Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA, Ap. XVIII, Art. 24, establece que el PSAJ tiene la responsabilidad de investigar y evaluar a todo imputado de ciertos delitos, con el fin de ofrecer sus recomendaciones a los Tribunales en cuanto a la posibilidad de decretar la libertad provisional al imputado, y la fijación de los términos y condiciones de la fianza correspondiente. También, tiene el propósito de eliminar la desigualdad económica en la obtención de la libertad provisional, conforme al derecho constitucional de un imputado de delito de permanecer en libertad bajo fianza, durante el tiempo que se ventile el

proceso criminal en su contra y hasta el momento de determinarse un fallo condenatorio, de ser el caso. *Íd.*

La Unidad Especializada de Investigaciones y Arrestos es un organismo civil de orden público que se encuentra adscrita a la Oficina de Servicios con Antelación al Juicio (ahora, PSAJ). Sec. 5.1 del Art. 5 del Reglamento 6635, *supra*. Este cuerpo está regulado, en parte, por el Reglamento de la Unidad Especializada de Investigaciones y Arrestos, Reglamento 6635 de 13 de junio de 2003, el cual fue promulgado para darle uniformidad a los procedimientos que llevan a cabo los funcionarios de dicha Unidad.

Conforme con la Sección 6.1 del Artículo 6 del Reglamento 6635, s*upra*, los agentes de la referida Unidad están facultados para lo siguiente: realizar instalaciones y remociones de sistema de monitoreo electrónico; visitar a los liberados bajo supervisión electrónica para la verificación del equipo y cumplimiento de las condiciones impuestas por el Tribunal; así como recibir las alertas del programa de supervisión electrónica y corroborarlas.

**III. Aplicación del derecho a los hechos**

a.

La teoría legal que presenta la parte peticionaria para sustentar su moción de supresión de evidencia es que esta fue ilegalmente obtenida, por haberse realizado sin motivos fundados. En específico, arguye que la Policía de Puerto Rico no podía valerse de los funcionarios del PSAJ, y el dispositivo electrónico con el cual se monitoreaba al peticionario bajo fianza, para obtener la información que se recopiló en su contra, constituyendo ello un registro sobre su persona que requería orden judicial previa. A su vez, sostiene que el testimonio del Agte. Lorenzo Bonet fue uno estereotipado, como mero subterfugio para justificar la intervención ilegal.

Por su parte, la Procurador General advierte que el dispositivo electrónico instalado en el cuerpo del peticionario, para que se pudiera beneficiar de la libertad bajo fianza en lo que se ventila el proceso criminal, fue aceptado voluntariamente por este, lo que incluyó la facultad del PSAJ de rastrear sus movimientos para verificar el cumplimiento de las condiciones asumidas. Arguye que, aunque inicialmente el Agte. Lorenzo Bonet le refirió al oficial Ocasio Vargas la información sobre el posible incumplimiento del peticionario con las condiciones de su libertad bajo fianza, fue la PSAJ, no la Policía, quien ordenó investigar tal información como parte de la supervisión de las condiciones para permanecer en libertad bajo fianza. Añade que la intervención del referido agente ocurrió luego de que el personal del PSAJ le compartiera la referida información al Agte. Lorenzo Bonet, sobre la violación de las condiciones para permanecer en libertad bajo fianza, (manipulación de un dispositivo de supervisión electrónica), obteniendo así los motivos fundados para intervenir. Además, llamó la atención al hecho de que la prueba cuya supresión se solicitó fue *evidencia arrojada*, y el agente Lorenzo Bonet declaró detalladamente sobre lo acontecido antes, durante y después de dicha intervención, librando su testimonio de ser uno estereotipado.

b.

Según ya lo indicamos en el recuento procesal, en la vista de supresión de evidencia celebrada ante el TPI el Ministerio Público desfiló prueba documental **y testifical,** con el propósito de establecer la razonabilidad de la intervención policial en la persona del peticionario, teniendo el peticionario oportunidad de impugnarla a través de contrainterrogatorios. Entonces, luego de aquilatar el conjunto de la prueba que tuvo ante su consideración, el foro recurrido enumeró cuarenta y seis determinaciones de hechos, en las cuales ancló las conclusiones de derecho, que le condujeron a denegar la solicitud de supresión de evidencia.

Como se sabe, el magistrado que presida una vista sobre supresión de evidencia está facultado para adjudicar o dirimir credibilidad en la misma, según aquí lo hizo y dejó manifiesto en la *Resolución* recurrida. *Pueblo v. Bonilla Romero*, 120 DPR 92 (1987). Resulta ya trillado hacer notar que cuando se cuestiona y señala que el foro primario erró en su apreciación de la evidencia, *el alcance de nuestra función revisora está limitado por consideraciones de extrema valía, pues no podemos perder de perspectiva que* **nuestro esquema probatorio está revestido por un manto de deferencia hacia las determinaciones que realizan los juzgadores de primera instancia en cuanto a la prueba testifical que se presenta ante ellos**. (Énfasis provisto). *Pueblo v. Toro Martínez*, 200 DPR 834 (2018). Esto es así pues, *el juez del TPI es ante quien deponen los testigos, quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contracciones, manierismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Íd.* **Un tribunal revisor tiene vedado intervenir con la adjudicación de credibilidad de los testigos, ni puede sustituir las determinaciones de hechos que, a su amparo, haya efectuado el foro primario basado en sus propias apreciaciones**. (Énfasis provisto). *Íd.*

A raíz de lo anterior, **no** debemos (los foros apelativos) intervenir con la apreciación y adjudicación de credibilidad que con relación a la prueba testifical hubiese realizado el juzgador de los hechos a nivel de instancia, **en ausencia de pasión, prejuicio, parcialidad o error manifiesto**. (Énfasis provisto). *Pueblo v. Hernández Doble*, 210 DPR 850 (2022). Incurre en pasión, prejuicio o parcialidad el juzgador que *actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias, o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna. Íd.* Sobre el referido *error manifiesto*

nuestro alto Foro considera que acontece*, cuando la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. Íd.*

Por último, sobre el mismo tema, es al TPI a quien corresponde dirimir la prueba testifical cuando surgen conflictos de credibilidad en la prueba de cargo, estando dicho foro primario en mejor posición que el apelativo para efectuar tal ejercicio valorativo sobre la prueba conflictiva, que debe prevalecer. *Pueblo v. Maisonave*, 129 DPR 49 (1991).

Valga destacar que, aunque el peticionario incluyó en su apéndice la grabación de la vista de supresión de evidencia celebrada ante el TPI, en su recurso de *certiorari* no hizo alusión alguna a esta, y menos aún llamó nuestra atención sobre qué partes específicas de los testimonios allí captados debíamos considerar para persuadirnos de que, por ejemplo, el testimonio del Agte. Lorenzo Bonet hubiese sido uno *estereotipado*. Vista la totalidad del recurso de *certiorari*, notamos que ni siquiera fue incluida la alegación general de que las determinaciones de hechos del TPI hubiesen sido producto de la *pasión, prejuicio, parcialidad o el error manifiesto* que nos habilitarían para intervenir con estas. En cualquier caso, lo cierto es que no hay rastro de una actuación tal por parte del juzgador de lo hechos, de modo que nos corresponde partir de la presunción de corrección que el ordenamiento reconoce a las determinaciones de hechos enumeradas por TPI en la *Resolución* recurrida, al atender los planteamientos de derecho alzados. *Pueblo v. Pérez Delgado*, 211 DPR 654, 674 (2023).

c.

La afirmación anterior condiciona en gran medida el curso decisorio a seguir respecto a los señalamientos de error segundo y tercero, por cuanto los tales están imbricados con las determinaciones de hechos contenidas en la *Resolución* recurrida, así que iniciaremos atendiéndolos. Aduce el peticionario, que *el testimonio del Agte. Lorenzo Bonet es uno*

*totalmente estereotipado por limitarse a establecer los elementos mínimos que justificarían la ocupación de evidencia alegadamente abandonada.[7]*

A pesar de la aseveración general del peticionario, este no se ocupó de explicar ante nosotros por qué debemos considerar que el testimonio del agente mencionado fue *inherentemente irreal o improbable*, o qué *contradicciones, lagunas o vaguedades* lo revelan como estereotipado. Contrario a ello, juzgamos que las determinaciones de hechos plasmadas en la *Resolución* recurrida dejaron claro el tracto de las *circunstancias,* los *detalles,* el *término de la investigación y los resultados alcanzados* que libraron el referido testimonio de la calificación de *estereotipado.*[8] En lo particular, desde la determinación de hechos decimosexta fue plasmado al detalle el inicio, desarrollo y culminación de la cadena de eventos que desembocó en el arresto del peticionario, junto a la incautación del material delictivo que abandonó. Así, se dejó constancia, por ejemplo, del día en que el Agte. Lorenzo Bonet le informó al oficial Ocasio Vargas sobre la confidencia recibida, sobre la presunta manipulación por el peticionario del dispositivo electrónico, y el plan investigativo que ello provocó. De igual forma, el Agte. Lorenzo Bonet describió el lugar desde donde se apostó para observar al peticionario, con indicación de día y hora, más descripción de los movimientos de este. Fue establecido, además: las conversaciones que dicho agente se mantuvo sosteniendo con el oficial Ocasio Vargas, particularizando su contenido; la descripción del vehículo donde se transportó el peticionario y cómo este vestía; las circunstancias en que este último se bajó del auto, corrió y arrojó la evidencia incautada, hasta su arresto. A su vez, el testimonio del Agte. Lorenzo Bonet quedó corroborado por el testimonio del oficial Ocasio Vargas, a quienes la defensa del peticionario tuvo amplia oportunidad de contrainterrogar.

---

[7] Recurso de *certiorari,* pág. 21.

[8] Las palabras en esta oración puestas en *cursivo,* aluden a los elementos que la jurisprudencia identifica que debemos considerar al momento de revisar la imputación de que un testimonio es estereotipado. Véase, *Pueblo en interés del menor ALRG y FRG,* 132 DPR 990 (1993); *Pueblo v. González del Valle,* 102 DPR 374 (1974).

Por tanto, reiteramos, las determinaciones de hechos alcanzadas por el TPI, luego de aquilatar el testimonio del Agte. Lorenzo Bonet, junto a la demás prueba testifical aportada por el Ministerio Público, revelan que dicho testimonio superó la calificación de *estereotipada* que debemos rechazar, y en el recurso de *certiorari* no encontramos rastro de elementos que nos muevan a intervenir con tal determinación. Además, el que se ateste que se ocupó la evidencia por estar a plena vista, o por haber sido abandonada o lanzada al suelo *no conlleva que estemos ante un testimonio estereotipado que torne ilegal la misma, cuando, como en este caso, el testimonio ofrecido no se limitó a generalidades, o se abstuvo de aportar detalles. Pueblo v. Espinet Pagán*, 112 DPR 531 (1982).

Íntimamente relacionado con lo anterior, la misma prueba testifical, según apreciada por el foro recurrido, también estableció que la confidencia recibida por el Agte. Lorenzo Bonet, respecto a la presunta manipulación por el peticionario del dispositivo de vigilancia electrónica, fue corroborada por el oficial Ocasio Vargas, antes de que aconteciera el arresto del peticionario.[9] En ese sentido, el TPI fue puntilloso al enumerar los hechos relativos a este asunto, correspondientes al momento en que el oficial Ocasio Vargas compartió con el Agte. Lorenzo Bonet que el peticionario había salido del perímetro en el cual estaba obligado a permanecer, y manipulado el dispositivo electrónico al que estaba sujeto, violentando así las condiciones para permanecer en libertad bajo fianza. Es decir, dicho oficial, (quien inició la cadena de transmisión del motivo fundado, y testificó en la vista), transfirió al Agte. Lorenzo Bonet los motivos fundados para intervenir con el peticionario, al afirmar que este último había manipulado el referido dispositivo electrónico, lo que constituye delito. A su vez, tal violación del peticionario a las referidas

---

[9] Como se sabe, aunque nuestro Tribunal Supremo ha identificado cuatro criterios para examinar un arresto basado en confidencias, el esencial de estos es que *la confidencia haya sido corroborada por el agente ya sea mediante observación personal o por información de otras fuentes. Pueblo v. Serrano Cancel*, 148 DPR 173 (1999); *Pueblo v. Muñoz, Colón y Ocasio*, 131 DPR 964 (1992).

condiciones también quedó evidenciada por las observaciones del propio Agte. Lorenzo Bonet al testificar que, recibida la información del oficial Ocasio Vargas aludida, observó cómo el peticionario salió de la residencia, lo que provocó que le siguiera en el vehículo oficial, para luego correr tras de él. Añádase que, el propio oficial Ocasio Vargas, luego de percatarse de la violación de las condiciones a la libertad bajo fianza del peticionario a través de medios electrónicos, se presentó a la residencia de la cual se supone este no saliera, y habló con el papá, cerciorándose de que no se encontraba en dicho lugar.[10]

En la misma tónica, pero considerando el testimonio del Agte. Lorenzo Bonet al narrar que el peticionario *arrojó* la evidencia incautada, cabe reconocer que la juzgadora le concedió plena credibilidad a lo así declarado, haciéndolo contar en el dictamen recurrido. Sépase que, una vez el tribunal *a quo* le concedió credibilidad al testimonio de dicho agente respecto a la evidencia arrojada, y en ausencia de elementos que nos habiliten para intervenir con tal apreciación de la prueba testifical, no cabe hablar aquí ni siquiera de un registro ilegal, por cuanto nuestro Tribunal Supremo ha hecho claro que *la garantía constitucional contra allanamientos y registros ilegales **no cubre la incautación de evidencia que es voluntariamente arrojada y abandonada**.* (Énfasis provisto). Pueblo en interés del menor *A.L.R.G. y F.R.G.*, 132 DPR 990 (1993); *Pueblo v. Ortiz Martínez*, 116 DPR 139 (1985). La cláusula constitucional sobre registro y allanamientos irrazonables no se activa cuando la evidencia ocupada ha sido abandonada. *Pueblo v. Díaz, Bonano,* 176 DPR 601 (2009).

En definitiva, los errores segundo y tercero no fueron cometidos.

d.

El último señalamiento de error a ser considerado puede ser resumido en la siguiente expresión del peticionario: *le correspondía al*

---

[10] Ver determinaciones de hechos 9-14 y 29 de la *Resolución* recurrida, apéndice del recurso de *certiorari,* págs. 4-6.

*Ministerio Público establecer que existía alguna justificación o razonabilidad para el registro sin orden que llevó a cabo la Policía de Puerto Rico valiéndose del sistema de supervisión electrónica de PSAJ, el cual tiene un uso limitado a velar las condiciones de la fianza.[11]* Afirmando que nuestro Tribunal Supremo no ha considerado aún una controversia similar al caso ante nuestra consideración, el peticionario nos refiere a sendas Opiniones del Tribunal Supremo de los Estados Unidos, como favorables a la teoría legal que impulsa. Veámoslas, en lo pertinente.

En *Samson v. California,* 547 US 843 (2066), la Corte Suprema federal sostuvo que la policía podía conducir un registro de una persona bajo libertad condicional, aun cuando no hubiese una sospecha específica o razonable de que estaba cometiendo actos delictivos, debido a que la expectativa de intimidad limitada que ostentaba el convicto, quien cumplía su sentencia fuera de la cárcel **condicionado a que cumpliera con ciertas restricciones, incluyendo el permanecer bajo la custodia del Departamento de Corrección era menor**. (Énfasis provisto). Al así decidir, dicho alto Foro le confirió peso al consentimiento prestado por el convicto, pues conocía las condiciones a las cuales estaba sujeto para permanecer en libertad bajo palabra, las cuales les fueron explicadas y este las suscribió. Ante la situación descrita, el Tribunal Supremo Federal concluyó que el allí convicto no ostentaba una expectativa de intimidad que la sociedad reconociera como legítima.

Precisamente, sobre el consentimiento, en *Grady v. North Carolina,* 575 US 306 (2015), la Corte Suprema Federal sostuvo que, en ausencia de este, el Estado conduciría un registro ilegal al instalar un dispositivo en el cuerpo de una persona para propósitos de monitorear sus movimientos. En palabras de dicho Foro, *a State conducts a search when it attaches a device to a person´s body **without consent**, for the purpose of tracking that individual´s movements. Íd.*

---

[11] Recurso de *certiorari*, pág. 17.

Ahora bien, el asunto ha de ser examinado bajo los postulados de la Constitución de Puerto Rico, por cuanto, como se sabe, el derecho a la intimidad reconocido en nuestra constitución *tiene un alcance más amplio que en el sistema federal de Estados Unidos. Weber Carrillo v. E.L.A.*, 190 DPR 688, 701 (2014). En nuestro ordenamiento jurídico, esta protección constitucional se considera un valor comunitario de indiscutible jerarquía y, según hemos hilvanado jurisprudencialmente, consagra varios propósitos fundamentales. *Íd.*

A lo anterior se debe unir que, aun aquellas agencias que poseen un poder investigativo amplio, no quedan, en el ejercicio de tal autoridad, al margen de los postulados constitucionales que informan nuestro ordenamiento. *Íd.*

Sin embargo, como ya hemos subrayado, la protección constitucional sobre registros y allanamientos irrazonables no opera automáticamente, sino que se activa cuando la persona afectada tiene una expectativa razonable de intimidad sobre el lugar o los artículos registrados. *Íd.* En vista de lo cual, el criterio rector para evaluar si se ha violado el derecho consagrado en la Cuarta Enmienda de la Constitución de Estados Unidos o en las Secciones 8 y 10 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico es, reiteramos, *si la persona afectada alberga una expectativa de intimidad sobre el lugar o artículo que habrá de ser registrado y si tal expectativa es razonable a la luz de los criterios prevalecientes en la sociedad. Íd.* La protección constitucional está presente tanto en los procesos de naturaleza penal como en los de índole administrativa. *Íd.*

Finalmente, el análisis que se requiere para determinar si existe una expectativa razonable de intimidad que active la protección constitucional contra los registros y allanamientos irrazonables tiene dos etapas: la primera conlleva un análisis subjetivo que permite concluir si el reclamante, según las circunstancias del caso, alberga una expectativa

real de que su intimidad se respete; entonces, si esa expectativa existe, se procederá a la segunda etapa, en la que se realiza un análisis objetivo para determinar si la sociedad considera razonable tener tal expectativa. *Íd.*

Visto lo anterior, conviene auscultar el funcionamiento del dispositivo electrónico que llevaba el peticionario como parte de permanecer en libertad bajo fianza, mientras espera las distintas etapas del proceso criminal iniciado en su contra.

Según adelantamos, la Unidad Especializada de Investigaciones y Arrestos del PSAJ, según la Sec. 5.1 del Art. 5 del Reglamento 6635, *supra*, faculta a sus agentes para: realizar instalaciones y remociones del sistema de monitoreo electrónico; visitar a los liberados bajo supervisión electrónica para la verificación del equipo, y velar por el cumplimiento de las condiciones impuestas por el Tribunal para permanecer en libertad bajo fianza; así como recibir las alertas del programa de supervisión electrónica y corroborarlas.

En consonancia, el Reglamento 5991, *supra*, dispone que el PSAJ tiene jurisdicción sobre todo imputado de delito que conlleve la fijación de una fianza conforme a las Reglas de Procedimiento Criminal y que es compulsorio que este se someta a la jurisdicción de dicha Oficina. Art. 5 del Reglamento 5991, *supra*. Dicha jurisdicción se extiende desde la investigación y evaluación previa a la comparecencia ante el tribunal -con el propósito de ofrecer recomendaciones sobre la posibilidad de decretar su libertad provisional y los términos y condiciones para su concesión-, **hasta la supervisión y seguimiento del cumplimiento de las condiciones que le sean impuestas.** Art. 6 del Reglamento 5991, *supra*. A su vez, el Art. 7 del Reglamento 5991, *supra,* dispone que todo liberado bajo la jurisdicción de la Oficina **será supervisado mientras esté sujeto a responder por el delito imputado.**

Más adelante, el Art. 19 del Reglamento 5991, *supra*, establece que, evaluadas las recomendaciones, el Tribunal emitirá una Resolución

disponiendo la medida seleccionada y/u ordenando al imputado o acusado a permanecer bajo la supervisión de la Oficina. Además, **en dicha Resolución el juez enumerará las condiciones impuestas y apercibirá al imputado de que cualquier incumplimiento de las condiciones será constitutivo de desacato** y que, de conformidad con las Reglas de Procedimiento Criminal, el Tribunal podrá: revocar la medida de la libertad provisional impuesta; expedir una orden de arresto y ordenar la encarcelación inmediata del imputado de no prestar una fianza pecuniaria. *Íd.* Asimismo, apercibirá al imputado de que la determinación de causa probable por un nuevo delito conllevará la cancelación automática de la medida de libertad provisional. *Íd.*

Por último, el imputado o acusado **dará fe de haber sido advertido y de entender las advertencias y las consecuencias del incumplimiento con la orden del tribunal, firmará la Resolución aceptando las mismas y obligándose el imputado** y el tercero custodio **a cumplir con las condiciones**, así como a comparecer a los procedimientos que se lleven a cabo en su contra. *Íd.* **Así, al someterse a la jurisdicción de PSAJ y al firmar la Resolución, el imputado o acusado presta su consentimiento expreso a, entre otras cosas, ser supervisado, para dar cumplimiento a las condiciones que le sean impuestas para permanecer en libertad mientras se encuentra sumariado. En el caso de estar sujeto a supervisión electrónica ello incluye el monitoreo.** *Íd.* (Énfasis provisto).

De lo dicho surge con meridiana claridad que el peticionario se sometió a la jurisdicción de PSAJ para poder quedar libre bajo fianza, consintiendo a las condiciones requeridas por el sistema electrónico de monitoreo descrito, **lo que necesariamente supone reconocerle un grado atenuado de expectativa de intimidad**. En este sentido, el peticionario expresamente consintió a que el PSAJ monitoreara sus movimientos para asegurar el cumplimiento con las condiciones

consentidas que, en este caso, le requería no salir de la residencia, por cuanto debía permanecer en *lock down.*

En efecto, y según ya discutimos, las determinaciones de hechos enumeradas por el tribunal *a quo* lo que muestran es que, una vez el Agte. Lorenzo Bonet llevó a la atención del oficial Ocasio Vargas la confidencia de que el peticionario estaba manipulando el dispositivo electrónico, este último llevó a cabo las gestiones que por disposición reglamentaria les correspondía, es decir, supervisar que se estuvieran cumpliendo las condiciones para permanecer en libertad bajo fianza, lo que necesariamente comportaba examinar sus movimientos. El proceso de corroboración de tal confidencia por el oficial del PSAJ a cargo de ello, en modo alguno lesionó el atenuado derecho a la intimidad que cabría reconocerle al peticionario, habiendo dado este su consentimiento, precisamente, a que se pudieran monitorear sus movimientos como condición para permanecer en libertad bajo fianza.

Finalmente, sin necesidad de reiterar sobre el hecho de que la confidencia fue debidamente corroborada, y los motivos fundados efectivamente transmitidos por el oficial Ocasio Vargas al Agte. Lorenzo Bonet, coincidimos con el foro primario cuando **no** apreció lesión al derecho de intimidad del peticionario, y juzgó razonable la intervención que dio lugar a la obtención de la evidencia cuya supresión se solicitó.

**IV. Parte dispositiva**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, expedimos el recurso de *certiorari* y *confirmamos* la *Resolución* recurrida.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones